Marcel TATE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0502–CR–81.

Court of Appeals of Indiana.

Oct. 12, 2005.

Transfer Denied Dec. 15, 2005.

Kimberly A. Jackson, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Marcel Tate (Tate), appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Class B felony, Ind.Code § 35–47–4–5; and his adjudication as an habitual offender, I.C. § 35–20–2–8.

We affirm.

### ISSUES

Tate raises three issues on appeal, which we restate as the following four issues:

(1) Whether the warrantless entry and search of the motel room where Tate was present violated his rights under the Fourth Amendment of the United States Constitution and Art. I, Section 11 of the Indiana Constitution;

(2) Whether the trial court erred by admitting police reports and other law enforcement records to establish Tate's criminal history;

(3) Whether the evidence was sufficient to support Tate's conviction for unlawful possession of a firearm by a serious violent felon; and

(4) Whether the evidence was sufficient to support the finding that Tate is an habitual offender.

### FACTS AND PROCEDURAL HISTORY

In late October of 2002, Tate and Shantell Smith (Smith) purchased several guns.

Some time after the purchase of the guns, Tate and Smith placed the guns in a vehicle that they then drove to the Dollar Inn, located at 6231 West Washington Street in Indianapolis, Indiana.

On the evening of October 31, 2002, Marion County Deputy Sheriff John Howard (Deputy Howard), along with two additional officers, conducted a walk-through of the Dollar Inn where Tate and Smith were renting a room. This particular motel was targeted for walk-through inspections by the Marion County Sheriff's Department because of its reputation as a site of previous and ongoing criminal activity. During their scope of the premises, Deputy Howard detected an odor of marijuana coming from a room in the rear portion of the motel. Deputy Howard identified Room 140, Smith and Tate's room, as the source of the scent by matching the odor to emissions from Room 140's outdoor air conditioning vent.

Deputy Howard proceeded to knock on the door of Room 140, which was answered by Tate's girlfriend, Nakisha Marfia (Marfia). Although disputed by Marfia's testimony at a pre-trial suppression hearing, Deputy Howard testified at trial that he then asked Marfia for permission to enter the room and speak with her, and that she so agreed.

Once inside the doorway of the motel room, Deputy Howard observed Tate sitting on the bed closest to the door, and a handgun sitting on a vanity toward the back of the room. Soon thereafter, Smith exited the bathroom, putting him in close proximity to the handgun on the vanity. Thus, out of concern for their safety, the officers then secured the handgun and the room's occupants, identified as Smith, Tate, Marfia, and Latoya Russell (Russell) who was found in the bathroom.

After the room was secured, Deputy Howard observed other contraband in plain view, including a shotgun behind the room's front door, a black powder gun near the television, a cross bow and arrow, and some pellet guns covered in part by some clothing between the television and vanity. In addition, by looking in the bathroom, Deputy Howard testified that he could see marijuana on the back of the toilet. Next, Deputy Howard requested that Smith, the occupant under whose name the room was registered, sign a form consenting to an official search of the room. Smith complied, but no other drugs or weapons were found.

On November 4, 2002, the State filed an information charging Tate with Count I, unlawful possession of a firearm by a serious violent felon, a Class B felony, I.C. § 35–47–4–5; Count II, carrying a handgun without a license, a Class A misdemeanor, I.C. § 35–47–2–1; and Count III, possession of marijuana, a Class A misdemeanor, I.C. § 35–48–4–11. The charging information was then amended on December 16, 2004, to include only Count I, and an habitual offender charge. A bifurcated jury trial was subsequently held on the same date as to Count I, unlawful possession of a firearm by a serious violent felon. The jury trial resulted in a verdict of guilty.

Tate waived his right to a jury trial in determining his habitual offender status. Rather, a bench trial was held on this issue immediately following announcement of the jury's verdict on the serious violent felon charge. At the close of the evidence, the trial court adjudicated Tate to be an habitual offender.

On January 14, 2005, the trial court sentenced Tate to the presumptive ten (10) years imprisonment for his conviction of unlawful possession of a firearm by a serious violent felon, enhanced by twenty (20) years for being a habitual felon for a total

of thirty (30) years at the Indiana Department of Correction.

Tate now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Warrantless Search

#### A. Fourth Amendment Analysis

Tate first argues that the officers' search of the motel room was in violation of the Fourth Amendment of the United States Constitution because officers did not have proper consent, a search warrant, or probable cause to enter the room. Thus, in effect, Tate argues that the trial court erred in denying his motion to suppress the evidence officers seized once inside the motel room.

■ However, for us to review the admission of such evidence, a specific and timely objection must be made to preserve the error for review. *Sturma v. State,* 683 N.E.2d 606, 608 (Ind.Ct.App.1997). A trial court's denial of a motion to suppress is not sufficient to preserve the error. *Id.* Here, Tate concedes that he did not object during trial to the admission of evidence seized from the motel room, but now claims that it was fundamental error for the trial court to admit such evidence.

■ Fundamental error is a substantial, blatant violation of basic principles rendering the trial unfair and depriving the defendant of fundamental due process. *Britt v. State,* 810 N.E.2d 1077, 1080 (Ind. Ct.App.2004). To qualify as fundamental error, "an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Merritt v. State,* 822 N.E.2d 642, 643 (Ind.Ct.App.2005). Thus, the fundamental error exception to the waiver rule is extremely narrow, "available only when the record reveals clearly blatant violations of basic and elementary principles of due process, and the harm or potential for harm cannot be denied." *Id.* at 643–44. Accordingly, we will now review Tate's claim that his rights under the Fourth Amendment were violated when officers seized evidence from his motel room.

■ The Fourth Amendment of the United States Constitution protects citizens against unreasonable searches and seizures by the government. *Id.* Searches and seizures conducted inside a person's home without a warrant are presumed to be unreasonable. *Buckley v. State,* 797 N.E.2d 845, 848–49 (Ind.Ct.App.2003). In this case, a motel room is included in the definition of "home" for Fourth Amendment purposes. *Willis v. State,* 780 N.E.2d 423, 428 (Ind.Ct.App.2002). When a search of a home is conducted without a warrant, the burden is placed on the State to prove that an exception to the warrant requirement existed at the time of the search. *Id.* at 849.

Tate specifically sets forth the following arguments in support of his contention that the trial court erred in admitting evidence found inside the motel room: (1) the officers failed to get consent from an appropriate, authorized party before entering and searching the motel room; (2) the trial court erred in using the plain view doctrine as a basis to admit the evidence seized from the motel room; and (3) the officers lacked probable cause to search the motel room.

■ At this point, we find it necessary to distinguish between Tate's argument that officers did not obtain proper consent to *enter* the room, and the argument that officers did not obtain proper consent to *search* the room. To clarify, we would first like to note that we do not find any evidence that Deputy Howard did not permissibly enter the motel room in the

first place. Although Tate argues that Deputy Howard did not receive proper consent to enter the room, our review of the record leads us to disagree with this contention. As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the time lead a person of reasonable caution to conclude that the consenting party had authority over the premises. *Primus v. State*, 813 N.E.2d 370, 375 (Ind.Ct.App. 2004). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. *Id.*

In Tate's case, the record indicates that Marfia, Tate's girlfriend, willfully opened the motel room's door shortly after Deputy Howard knocked, and that Deputy Howard was under the impression that the room was registered to a female ("Shantell Smith"). Even if erroneous, we find that the belief that Marfia was actually Smith was reasonable. *See id.* Furthermore, it is reasonable to believe that occupants of the same motel room share joint access and mutual use of the room, and thus it was also reasonable for officers to conclude that Marfia possessed the authority to give consent to enter the room. *See id.* Thus, Tate's contention that Marfia did not possess authority to let Deputy Howard into the room is without merit. Moreover, there is absolutely no evidence that officers used coercion or forcible threats to gain entry. *See Lander v. State*, 762 N.E.2d 1208, 1212 (Ind.2002).

 Next, we need to determine whether the officers' actual search of the motel room was reasonable under the Fourth Amendment. *See Fox*, 797 N.E.2d 1173, 1176 (Ind.Ct.App.2003), *trans. denied.* The Fourth Amendment to the United States' Constitution states in part: "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" *Ware v. State*, 782 N.E.2d 478, 481 (Ind.Ct.App. 2003), *reh'g denied.* As such, "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.*

 Valid consent is a well-recognized exception to obtaining a search warrant. *Halsema v. State*, 823 N.E.2d 668, 676 (Ind.2005). This includes consent given by a third party having common authority or a sufficient relationship to the premises to be searched. *Id.* Here, Smith, as a registered guest of the motel, undoubtedly had proper authority to consent to a search of his room. Accordingly, we find more than enough evidence of valid consent to search the room because Smith—the motel's registered occupant—signed a valid consent form. Therefore, we conclude that the search of the motel room was reasonable under the Fourth Amendment and consequently, the evidence resulting from the search was properly admitted at trial.

 Finally, we find Tate's argument that officers lacked probable cause to enter and search his motel room without merit. This court has previously held that a knowing and voluntary consent to search obviates the need for a warrant and probable cause. *Hannoy v. State*, 789 N.E.2d 977, 982 (Ind.Ct.App.2003), *reh'g granted on other grounds, trans. denied.* Thus, here, Marfia's consent to enter the room, along with Smith's written consent to search the room obviated the officers' need for probable cause or a warrant. We distinguish Tate's case from the facts in *Ware v. State*, where officers failed to get consent to enter a home from which they

smelled the odor of marijuana. *Ware*, 782 N.E.2d at 480. Here, we find that consent was given to enter the motel room and subsequently conduct a search of the room.

Further, we find that the officers' walk-through of the Dollar Inn shares certain characteristics with "knock and talk" investigations, where officers knock on a door of a home to talk to an occupant about criminal activity. *See Kendall v. State*, 825 N.E.2d 439, 458 (Ind.Ct.App. 2005). In these situations, we have stated that the prevailing rule is that, absent a clear expression by the owner to the contrary, officers may, in the course of their official business, approach one's dwelling and seek permission to question an occupant without probable cause. *Id.* at 458–59. Therefore, we conclude that Tate has failed to show that probable cause was necessary for officers to request entry and a search of the room.

In summary, we find that the State has met its burden, and successfully demonstrated that the officers' entry into and subsequent search of Tate's motel room was not in violation of Tate's Fourth Amendment rights. *See Fox*, 797 N.E.2d at 1177. Therefore, we conclude that the trial court did not commit error, let alone fundamental error, by admitting the evidence seized from Tate's motel room. *See Britt*, 810 N.E.2d at 1080.

B. *Article I, Section 11 Analysis*

 Next, we address Tate's claim that the officers' search of the motel room violated his rights under Article I, Section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to

be searched, and the person or thing to be seized.

This language tracks the Fourth Amendment verbatim, however the State of Indiana has adopted a different form of analysis for claims brought under Article I, Section 11. *See Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005). Under our state's constitution, the validity of a search by the government turns on an evaluation of the reasonableness of the officers' conduct under the totality of the circumstances. *Id.* Thus, the unique protections provided in the Indiana Constitution require us to review all the facts and circumstances that are particular to this case. *Bell v. State*, 818 N.E.2d 481, 484 (Ind.Ct. App.2004).

 We evaluate the totality of the circumstances, and thus the reasonableness of the search, by considering both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. *Litchfield*, 824 N.E.2d at 360. Here, the officers were on the grounds of the motel to curb criminal activity in the area. Furthermore, the record shows that the officers used articulable and individualized suspicion in selecting Tate's room for inspection. *See id.* (in part stating that "one factor that may render a search unreasonable is an arbitrary selection of the subject"). Specifically, Deputy Howard explained in his testimony at trial that he was led to Tate's room by matching the scent of marijuana to the room's air conditioning vent.

Therefore, we find not only the degree of intrusion minimal in light of the officers' goal of reducing crime at the motel, but that the officers used articulable and individualized suspicion in selecting Tate's room for investigation. Thus, we conclude that the consensual search was reasonable

under Article I, Section 11 of the Indiana Constitution. Accordingly, we again cannot agree with Tate's contention that it was fundamental error for the trial court to admit the evidence seized from his motel room. *See Britt*, 810 N.E.2d at 1080.

## II. *Admission of Evidence*

Tate next argues that the trial court erred in admitting into evidence particular records introduced to prove Tate's underlying convictions. Specifically, Tate contends that the following four exhibits admitted by the trial court are inadmissible hearsay: (1) State's Exhibit 19, which included a probable cause affidavit, certified information, certified commitment record, certified abstract of judgment, and certified plea agreement, all relating to a 1985 burglary charge against one [Tate]; (2) State's Exhibit 21, an officer's arrest report concerning the arrest of [Tate], identified as Defendant, in 1987 for violation of probation; (3) State's Exhibit 23, a police booking report and an officer's arrest report relating to an arrest of one [Tate] for burglary and theft in 1988; and (4) State's Exhibit 23, an officer's arrest report relating to an arrest of one [Tate] for possession of a firearm without a license in 1996.

█ The trial court has broad discretion in ruling on the admissibility of evidence. *Lyons v. State*, 735 N.E.2d 1179, 1183 (Ind.Ct.App.2000), *trans. denied*. We will reverse a trial court's ruling on the admissibility of evidence only when it has been shown that the trial court abused its discretion. *Id.* An abuse of discretion is established when a decision is clearly against the logic and effect of the facts and circumstances before the court. *Prewitt v. State*, 761 N.E.2d 862, 869 (Ind. Ct.App.2002).

█ Initially, we find that Tate failed to object at trial to the admission of State's Exhibits 23 and 25. Failure to object at trial to the admission of evidence results in waiver of that issue on appeal. *Kubsch v. State*, 784 N.E.2d 905, 923 (Ind.2003). Thus, our review is limited to the admission of State's Exhibits 19 and 21.

█ Tate bases his objection to the aforementioned exhibits on the hearsay rule. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and is not admissible unless it fits within an exception to the rule. *Jennings v. State*, 723 N.E.2d 970, 972–73 (Ind.Ct.App.2000). The exclusion of hearsay is meant to prevent the introduction of unreliable evidence that cannot be tested through cross-examination. *Serrano v. State*, 808 N.E.2d 724, 727 (Ind.Ct.App. 2004). However, records of regularly conducted business activity are admissible under Indiana Rule of Evidence 803(6), and public records and reports other than investigative reports prepared by law enforcement personnel, are admissible under Ind. Rule of Evid. 803(8). *Id.*

██ Here, Tate claims that the trial court erred in admitting a probable cause affidavit contained in State's Exhibit 19. We agree. Although it is unclear from the record whether the trial court relied upon the business records exception or the public records exception, we find that the express language of Ind. Rule of Evid. 803(8) excludes such reports prepared by law enforcement personnel. *See id.* Ind. Rule of Evid. 803(8) states in part:

The following are not within [the public records and reports] exception to the hearsay rule: (a) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (b) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (c) factual findings offered by the government in criminal cases; and

(d) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

The primary hearsay concern with such a report is that it may allow a trier of fact to draw conclusions from the statements made therein, which often contain the preparer's assumptions and personal interpretations of the events. *Payne v. State*, 658 N.E.2d 635, 646 n. 20 (Ind.Ct.App.1995). Thus, the statement of facts presented in a probable cause of arrest affidavit pose a risk of unreliability that the hearsay rule is designed to protect against. *See Serrano*, 808 N.E.2d at 727; *Rhone v. State*, 825 N.E.2d 1277, 1284 (Ind.Ct.App.2005) (probable cause affidavit inadmissible because it related to contested issue, contained factual findings selected by officer, and was created for advocacy purposes). Therefore, we agree with Tate that the trial court erred in admitting the probable cause affidavit.

However, we find this error to be harmless because we do not find similar hearsay concerns with the remainder of the documents admitted by the trial court in Exhibit 19. Rather, we find that the certified information, certified commitment record, certified abstract of judgment and certified plea agreement do not contain selective factual findings or interpretations by an investigator; therefore, these documents were appropriately admitted by the trial court. *See Payne*, 658 N.E.2d at 646. In addition, it has been previously held that certified copies of judgments and commitments may be introduced to prove the commission of prior felonies. *Tyson v. State*, 766 N.E.2d 715, 718 (Ind.2002).

▇▇▇ Finally, we find that the trial court properly admitted Exhibit 21, a 1987 arrest record, under Ind. Rule of Evid. 803(6), the business records exception.

The business records exception excludes from hearsay:

(6) Records of Regularly Conducted Business Activity. A memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Ind. Rule of Evid. 803(6). The arrest report in Exhibit 21 merely includes biographical information and the type of charge to be brought against arrestee. *See Payne*, 658 N.E.2d at 647. Even though the public records exceptions does not allow certain police reports to be admitted against a defendant in a criminal trial, we find that this particular record does not contain any subjective assumptions, statements, interpretations, or conclusions; thus, the protective exclusions of Rule 803(8) are not applicable here. *See id.*

Furthermore, testimony at trial indicates that arrest records are kept in the regular course of business at the Indianapolis Police Department (IPD). The record establishes that proper foundation was laid for the report's admission under the business exceptions rule by the testimony of Andrew Calderon (Calderon), a keeper of

arrest records for the Indianapolis Police Department (IPD) identification unit. Calderon testified that the arrest report was made near the time of the arrest event, prepared by an officer with personal knowledge, and was kept in the regular and routine course of business at IPD. Our court has stated that "the sponsor of an exhibit offered under this exception need not have personally made it, filed it, or had firsthand knowledge of the transaction represented by it. Such a person need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of the entry." *Id.* Here, we find that Calderon's testimony satisfied these requirements of the business records exception. Thus, we conclude that the trial court did not abuse its discretion in admitting the arrest report contained in Exhibit 21.

### III. *Sufficiency of Evidence*

Tate next contends that the evidence presented at trial was insufficient to support his conviction for unlawful possession of a firearm by a serious violent felon. Specifically, Tate argues that the State failed to prove he was a serious violent felon, and that he knowingly or intentionally possessed a firearm.

Our standard of review for a sufficiency of the evidence claim is well-settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209–10 (Ind.Ct.App.2001), *trans. denied.* The conviction will be affirmed if there is sub-

stantial evidence of probative value to support the conviction of the trier-of-fact. *Cox,* 774 N.E.2d at 1028–29. A judgment will be sustained based on circumstantial evidence alone if the circumstantial evidence supports a reasonable inference of guilt. *Maul v. State,* 731 N.E.2d 438, 439 (Ind.2000).

Unlawful possession of a firearm by a serious violent felon is defined by I.C. § 35–47–4–5, and states in pertinent part that: (c) a serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony. "A serious violent felon" is defined as a "person who has been convicted of committing a serious violent felony in Indiana." *Id.* Here, the State relied upon a prior burglary conviction to prove that Tate was a serious violent felon. According to the statute, a "serious violent felony" can include the crime of burglary. I.C. § 35–47–4–5(b)(15). Thus, the State had to prove that Tate was previously convicted of burglary, and thereafter, knowingly or intentionally possessed a firearm. *See* I.C. § 35–47–4–5.

Here, we find that the evidence supports the jury's finding that Tate has at least one prior felony conviction. The admissible documents found in Exhibit 19—a certified information, certified commitment record, certified abstract of judgment and certified plea agreement—support a finding that Tate was convicted of burglary, a Class B felony, in 1985. Regarding the use of certified documents to establish the existence of prior convictions, our supreme court has stated:

Certified copies of judgments or commitments containing a defendant's name or a similar name may be introduced to prove the commission of prior felonies. While there must be supporting evidence to identify the defendant as the

person named in the documents, the evidence may be circumstantial. If the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that a defendant who was convicted of the prior felony, then a sufficient connection has been shown.

*Tyson,* 766 N.E.2d at 718. Here, the certified abstract of judgment, certified plea agreement, and certified commitment record all bear the same cause number, CR85–111A, and contain information identifying Tate. Thus, we conclude that the documents reviewed by the jury yield a reasonable inference that Tate was previously convicted of burglary. Consequently, there was sufficient evidence from which a fact-finder could find beyond a reasonable doubt that Tate was previously convicted of burglary, and therefore was a serious violent felon. *See* I.C. § 35–47–4–5.

■■■ Additionally, Tate asserts that the State failed to prove beyond a reasonable doubt that he was in possession of a firearm. *Id.* Possession of a firearm may be either actual or constructive. *Causey v. State,* 808 N.E.2d 139, 143 (Ind.Ct.App. 2004). A person who has direct and physical control over a firearm has actual possession, whereas a person who has the intent and capability to maintain control over a firearm has constructive possession. *Id.* Here, Tate was not in physical possession of any firearm when officers entered the motel room; thus, the State must rely on his intent to maintain control over the firearms found in the room. To prove intent, the State must demonstrate that the defendant knew of the firearms' presence. *Id.* Such knowledge may be inferred from either exclusive dominion over the premises containing the firearm or from evidence of additional circumstances show-

ing that the defendant had knowledge of the firearm's presence. *Id.*

As Tate shared the motel room with three others, he did not have exclusive dominion over the premises; therefore, we must look for additional circumstances to show that he knew the firearms were in the room and that he was able to exercise control over them. *See Id.* This court has previously held that contraband in plain view and in close proximity to other items associated with the defendant are "additional circumstances" by which constructive possession may be proven in situations where the contraband is found on non-exclusive premises. *Person v. State,* 764 N.E.2d 743, 751 (Ind.Ct.App.2002). Here, since the firearms were in plain view of the officers, it can be reasonably inferred that they were also in plain view of Tate. The record also establishes that Tate was in close proximity to the firearms in the motel room, and we further find it reasonable to infer that the firearms were near other items owned by Tate because the facts show that he was staying in the motel room at the time.

In addition, we find sufficient evidence to show that Tate was capable of exercising control over the firearm. *See Causey,* 808 N.E.2d at 143. At trial, Smith testified that he and Tate purchased the firearms together, and transported the firearms in a vehicle to the motel. For all of these reasons, we conclude that enough evidence was before the jury to reasonably find that Tate, a serious violent felon, intentionally possessed a firearm. *See* I.C. § 35–47–4–5.

### IV. *Habitual Offender*

■■■ Next, Tate contends that the evidence was insufficient to support the trial court's ruling that Tate is an habitual offender. Again, in reviewing a claim of insufficient evidence, we do not reweigh the evidence, but look instead to the evi-

dence favorable to the judgment, along with any inferences reasonably drawn therefrom. *Cox*, 774 N.E.2d at 1028–29; *Alspach*, 755 N.E.2d at 209–10. We will affirm a judgment that is supported by substantial evidence of probative value. *Cox*, 774 N.E.2d at 1028–29.

Under I.C. § 35–38–1–3, a person is an habitual offender if the jury or the court finds that the State has proven beyond a reasonable doubt that the person has accumulated two (2) prior unrelated felony convictions. This court has previously held that a defendant convicted of unlawful possession of a firearm by a serious violent felon may not have his or her sentence enhanced under the general habitual offender statute by proof of the same felony used to establish that the defendant was a serious violent felon. *Townsend v. State*, 793 N.E.2d 1092, 1095 (Ind.Ct.App.2003), *trans. denied.* Thus, in Tate's case, the State was required to prove that he previously committed two felonies, other than the 1985 burglary, which this court is now relying upon to affirm his conviction for unlawful possession of a firearm by a serious violent felon.

Our review of the record reveals that the State introduced evidence showing Tate was convicted of theft, a Class D felony, in 1989, and that he was convicted of carrying a handgun without a license, a Class C felony, in 1997. To establish that Tate was convicted of theft as a Class D felony in 1989, the State introduced a certified copy of the charging information, a certified copy of a plea agreement, and a certified abstract of judgment all bearing the same Cause Number 49G0G8809CF103973. Thus, we find that the State presented sufficient evidence to allow the trial judge to conclude that Tate was previously convicted of theft. *See Tyson*, 766 N.E.2d at 718.

To prove Tate's 1997 felony conviction for carrying a handgun without a license, the State introduced a certified information, certified case chronology, and an uncertified abstract of judgment. Because the proof of a prior conviction is restricted to authenticated documents, we will consider only the certified information and certified case chronology. *See Wade v. State*, 718 N.E.2d 1162, 1170 (Ind.Ct. App.1999), *reh'g denied, trans. denied.* In doing so, we find that these two documents bear the same Cause Number 49G039606CF082961, and support a conclusion that a judgment of conviction against Tate for carrying a handgun without a license was entered on January 3, 1997.

Although Tate argues that the State failed to identify him as the person named in the documents, we find that such identification validation was stipulated to during the habitual offender phase. *See Tyson*, 766 N.E.2d at 718. The certified information and certified case chronology were admitted as part of State's Exhibit 26; however, additionally, the arrest report that matches this conviction and contains identifying information, including name and date of birth, was submitted as State's Exhibit 25. In discussing the admission of the arrest report in State's Exhibit 25, which contains a thumbprint, the following colloquy occurred:

[STATE]: [W]e're stipulating that this is a business record that falls within the business records exception, that on this business record is a right thumbprint, and the parties are stipulating that that right thumbprint belongs to Marcel Tate, the Defendant who is in the courtroom today.

THE COURT: Is that correct, Mr. [Defense Attorney]?

[DEFENSE ATTORNEY]: That's correct. I will stipulate that that was what

would be testified to by the fingerprint examiner.

(Transcript p. 275).

Furthermore, the case chronology shows that an information was filed on this charge within two days of the date shown on the arrest report. All of this evidence taken together leads us to conclude that there was sufficient evidence to support the court's determination that Tate was previously convicted of carrying a handgun without a license. Thus, we find that the State met its requirements in establishing the two prior felonies necessary to sustain an habitual offender adjudication.

## CONCLUSION

For the foregoing reasons, we find the following: (1) the trial court did not commit fundamental error in admitting evidence found during the search of Tate's motel room; (2) the trial court did not abuse its discretion in admitting various certified records relating to Tate's criminal history; (3) there was sufficient evidence to sustain Tate's conviction for unlawful possession of a firearm by a serious violent felon; and (4) there was sufficient evidence to support the trial court's adjudication of Tate as an habitual offender.

Affirmed.

BAKER, J., and MATHIAS, J., concur.