## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 28 2015, 9:26 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Matt Hayes, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 28, 2015 <br><br> Court of Appeals Case No. 28A01-1412-CR-554 <br><br> Appeal from the Greene Circuit Court <br><br> The Honorable Erik Allen, Judge <br><br> Trial Court Cause No. 28C01-1404-FB-14 |

**Baker, Judge.**

[1] James Hayes appeals his convictions for Class B Felony Dealing in Methamphetamine,[1] Class D Felony Possession of Methamphetamine,[2] and Class B Felony Conspiracy to Commit Dealing in Methamphetamine,[3] arguing that the trial court abused its discretion by admitting evidence obtained after law enforcement officers searched a mobile home and Hayes's person. Finding that Hayes lacked a sufficient privacy interest in the mobile home and that the officers' conduct did not violate the United States or the Indiana Constitutions, we affirm.

## Facts

[2] On April 15, 2014, after a night of smoking methamphetamine, Cory Slaven, Sierra Sipes, and Defendant James Hayes gathered at a mobile home in Greene County. They brought with them the accoutrements of methamphetamine production, including Mucinex D, Coleman camp fuel, and iodized salt. Hayes planned to make a fresh batch to smoke.

[3] The mobile home belonged to Craig Blake, who lived there with a friend. Hayes did not live there. Blake was briefly present on April 15, but then left.

---

[1] Ind. Code § 35-48-4-1.1.

[2] I.C. § 35-48-4-6.1.

[3] I.C. § 35-48-4-1.1; Ind. Code § 35-41-5-2.

At the bottom left corner at the end of the mobile home, there was a small "no trespassing" sign.[4]

[4] At some point in the evening, Slaven and Sipes had a heated argument, and Slaven left. Around 7:30 p.m., he called in an anonymous tip to the Greene County Sheriff's Department, telling the dispatcher that there was a methamphetamine lab at Blake's mobile home. Lieutenant Marvin Holt and Deputy Jordan Allor proceeded to the property in a marked police car, but did not use the lights or sirens. They parked out front and followed a gravel path that led to the main entrance of the home. They used flashlights to illuminate their way.

[5] The officers came up to a sliding glass door, knocked on it, and asked for Blake. From the doorway, they could see Sipes and Hayes sitting in the dark on a couch. Lieutenant Holt immediately recognized Hayes from an outstanding arrest warrant issued two days prior. He ordered Hayes to exit the home. Hayes eventually complied, after secreting away a two-liter bottle underneath a jacket.

[6] Hayes was placed in handcuffs and patted down. Lieutenant Holt discovered a wet paper towel wrapped in cellophane giving off a strong chemical odor. Hayes confirmed that it was methamphetamine. The officers then applied for,

_____

[4] The sign appears in photographs taken several months after April 15, 2014, and Hayes testified that Blake put it there around a year earlier. The State argues that it might have been placed there after April 15. For the purposes of this decision, we will assume the sign was posted before April 15.

and were granted, a warrant to search the mobile home. During the execution of that warrant, officers found the two-liter bottle, which held active methamphetamine solution, along with other methamphetamine manufacturing paraphernalia.

[7] On April 23, 2014, the State charged Hayes with class B felony dealing in methamphetamine, class D felony possession of methamphetamine, and alleged that he was an habitual substance offender. On August 22, 2014, the State added a charge of class B felony conspiracy to commit dealing in methamphetamine. Prior to trial, Hayes filed a motion to suppress, arguing that the officers' conduct violated his rights under the United States and Indiana Constitutions. The trial court denied his motion. Hayes renewed his argument by objecting at trial to the evidence obtained at the mobile home, and the trial court again ruled against him. Following the November 2014 trial, the jury found Hayes guilty as charged, and the trial court sentenced him to an aggregate sentence of thirty-two years imprisonment. Hayes now appeals.

## Discussion and Decision

## I. Standard of Review

[8] We review a trial court's decision regarding the admission of evidence for an abuse of discretion. *Smith v. State*, 889 N.E.2d 836, 839 (Ind. Ct. App. 2008). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts before the trial court. *Figures v. State*, 920 N.E.2d 267, 271 (Ind. Ct. App. 2010). While we do not reweigh evidence and we construe

evidence in a light most favorable to the trial court's ruling, we will consider uncontroverted evidence in the defendant's favor. *Cole*, 878 N.E.2d at 885. We conduct a de novo review of a trial court's ruling on the constitutionality of a search or seizure. *Belvedere v. State*, 889 N.E.2d 286, 287 (Ind. 2008).

## II. Fourth Amendment

[9] First, Hayes argues that when the officers walked onto the property and looked through the sliding glass door, his rights under the Fourth Amendment were violated.[5] The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." While it is meant to protect personal privacy and dignity against unlawful intrusion by the State, its "proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California*, 384 U.S. 757, 768 (1966).

[10] The United States Supreme Court does not frame its analysis as one of "standing" when analyzing Fourth Amendment rights but instead requires a defendant to "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*,

---

[5] Hayes only challenges the officers' initial approach and their looking through the sliding glass door as unlawful. He claims the search of his person incident to arrest and the subsequent search of the mobile home pursuant to the search warrant were fruit of the poisonous tree, but does not claim they were unlawful in and of themselves.

525 U.S. 83, 87-88 (1998). Under this analysis, defendants who stopped by an apartment for a matter of hours with the purpose of bagging cocaine did not have a legitimate expectation of privacy in the apartment. *Id.* at 91. In contrast, a defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Minnesota v. Olson*, 495 U.S. 91 (1990).

[11] Hayes never directly argues that he had an expectation of privacy in Blake's mobile home or that his expectation was reasonable. His argument centers on the contention that "[t]he tip was uncorroborated at the time the officers made illegal entry on the land, past the signs, and looked into the back of the trailer." Appellant's Br. 12. But it has long been the case that "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347 (1967). Hayes cannot successfully argue a violation of his Fourth Amendment rights absent showing an intrusion into his personal privacy.

[12] Even if Hayes had made that argument, he would not have succeeded. He testified at trial that he did not live at the mobile home and he was staying somewhere else. He has maintained throughout that he was merely a visitor. Thus, he more closely resembles the defendants in *Carter*—who were present at a location solely for a drug transaction—than the defendant in *Olson*, who was present at a location as an overnight guest. In his brief, Hayes never claims he spent even a single night at Blake's mobile home.

But even if Hayes did have a reasonable expectation of privacy in Blake's mobile home, his Fourth Amendment rights still were not violated because the officers did not conduct a "search." Our Supreme Court has explicitly acknowledged the legitimacy of "knock and talk" procedures, holding that there is no unreasonable search where police enter areas of the curtilage impliedly open to use by the public to conduct legitimate business. *Hardister v. State*, 849 N.E.2d 563, 570 (Ind. 2006). This allows the police to "use normal routes of ingress and egress from a residence to make appropriate inquiries of the occupants." *Id.* The Court further explained that "[a]n anonymous tip is not a basis for either reasonable suspicion or probable cause, but it is sufficient to make inquiries which the occupants are free to decline to answer if they so choose." *Id.* "The route which any visitor to a residence would use is not private in the Fourth Amendment sense, and thus if police take that route for the purpose of making a general inquiry or for some other legitimate reason, they are free to keep their eyes open . . . ." *Trimble v. State*, 842 N.E.2d 798, 802 (Ind. 2006).

That is precisely what happened here. Although Slaven's anonymous tip did not create either a reasonable suspicion or probable cause, the police were still permitted to make legitimate inquiries of the mobile home owner. Upon arriving, they used the normal route of ingress and egress by walking up the gravel walkway. Once the officer looked through the glass door and saw Hayes, the officer had probable cause to order Hayes outside to make the arrest. Thus, Hayes's "fruit of the poisonous tree" argument fails, because there is no

poisonous tree.  In sum, we find that the admission of this evidence did not violate Hayes's Fourth Amendment Rights.

# III.  Indiana Constitution

Hayes next contends that when the officers walked onto the property and looked through the sliding glass door,  his rights under Article 1, Section 11 of the Indiana Constitution were violated.  Although this provision directly tracks the Fourth Amendment of the United States Constitution, the analysis under Article 1, Section 11 "turns on an evaluation of the reasonableness of the officers' conduct under the totality of the circumstances."  *Tate v. State*, 835 N.E.2d 499, 507 (Ind. Ct. App. 2005).  The reasonableness of an officer's conduct depends on a "balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs."  *Lichtfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

When analyzing claims under the Indiana Constitution, Indiana courts have retained a standing requirement, according to which "a defendant must establish ownership, control, possession, or interest in either the premises searched or the property seized."  *Peterson v. State*, 674 N.E.2d 528, 534 (Ind. 1996).  The protection afforded by our Constitution extends to "claimed possessions irrespective of a defendant's interest in the place where the

possession was found." *Campos v. State*, 885 N.E.2d 590, 598 (Ind. Ct. App. 2008).

[17] Hayes's rights under our Constitution were not violated because he lacks standing to challenge the officers' conduct here. Hayes has not argued, much less established, ownership, control, possession, or an interest in the mobile home. He repeatedly referred to it as Blake's and stressed that he was a visitor. Nor does he claim a possessory interest in the methamphetamine paraphernalia seized on the property.

[18] Even if Hayes had established standing, the "knock and talk" procedure used did not violate the Indiana Constitution. Although an anonymous tip creates a very low degree of concern, suspicion, or knowledge of unlawful activity, the degree of intrusion was also very low. A simple knock on the front door to make inquiries is possibly the least intrusive method the officers could have chosen to investigate the tip. Furthermore, the degree of intrusion was not increased by the posting of the "no trespassing" sign. As we have said before, "it is illogical to think that law enforcement should be thwarted from ever approaching a house without a warrant to conduct an investigation, even along paths that any regular visitor would take, simply by the posting of a 'no trespassing' sign." *Baxter v. State*, 891 N.E.2d 110, 119 (Ind. Ct. App. 2008). Finally, law enforcement has a great need to make basic inquiries into the possible existence of a methamphetamine lab; not only is methamphetamine a dangerous substance to use, its manufacture involves a high risk of explosion.

In this case, the second and third factors outweigh the first; the officers did not act unreasonably.

[19] Here, the officers, acting on an anonymous tip, did not violate Hayes's rights under the United States or the Indiana Constitutions by walking up the gravel pathway to the main entrance of the mobile home, nor by looking in the sliding glass door. Therefore, the trial court did not err in admitting the evidence obtained following those actions.

[20] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.