## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 22 2015, 10:32 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Page
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Aaron G. Bradley, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 22, 2015 <br><br> Court of Appeals Case No. <br> 20A03-1502-CR-71 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Terry C. Shewmaker, Judge <br><br> Trial Court Cause No. <br> 21C01-1401-FB-8 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Aaron Bradley, Jr., was convicted of unlawful possession of a firearm by a serious violent felon, a Class B felony. The trial court sentenced Bradley to sixteen years in the Indiana Department of Correction. Bradley appeals his conviction and sentence, raising two issues for our review, which we restate as: (1) whether the evidence was sufficient to support a conviction for unlawful possession of a firearm by a serious violent felon; and (2) whether Bradley's sentence is inappropriate in light of the nature of the offense and his character. Concluding the State presented sufficient evidence and Bradley's sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] On the morning of January 3, 2014, Bradley called Dajuvetta Meux asking whether he could store some of his belongings in her apartment. Meux responded affirmatively. Five of Meux's children, including an infant child fathered by Bradley, were in the apartment when Bradley arrived.

[3] After Bradley arrived, he requested Meux drive him to an appointment. Bradley's appointment was a probation violation hearing. Meux said she would and went upstairs to brush her teeth. In the meantime, Meux requested Bradley grab some diapers located in a "cubbyhole that was kind of tall . . . [and] above a dresser" in an upstairs bedroom. Transcript at 336. According to Bradley, when he reached for the diapers, a firearm slid off the top of a box and

he "caught it from hitting" him. *Id.* at 338. Meux returned to the bedroom and witnessed Bradley holding the firearm. She instantly became upset with Bradley because the firearm "magically appeared" as soon as Bradley arrived with his belongings. *Id.* at 58. Meux did not allow firearms in the residence and thought he brought it into the apartment.

[4] Concerned for her children's safety, Meux requested Bradley remove the firearm from the residence. Bradley denied the request and "[t]hen he set [the firearm] on" a dresser. *Id.* at 62. Upset he would not remove the firearm, Meux blocked Bradley from exiting the room. A shoving match ensued between the two. Once the altercation calmed, Bradley again requested Meux take him to his appointment. Before leaving, Meux placed the firearm in her daughter's room because she felt it was the safest place in the apartment.

[5] Meux then drove Bradley to a nearby gas station so he could get cigarettes before his appointment. However, Meux left Bradley at the gas station and returned home, where she intended to call police to have the firearm removed. Before Meux called 911, Bradley returned to the apartment and—without permission—took her cell phone, car keys, and drove to his appointment. Despite not having her cell phone, Meux then called 911 and told the operator there was an altercation, she had been pushed and choked, and there was a firearm present in the apartment she wanted removed.

[6] Officer Jason Reed of the Elkhart City Police Department responded to the call. When he arrived, Meux directed Officer Reed to the firearm because the only

reason she called the police was to ensure the firearm was removed. Officer Reed discovered the .22 caliber revolver was loaded with hollow-point bullets. After collecting evidence, including the firearm, Officer Reed left the residence. "Because a lot of time in these situations the individual who's the suspect will often wait for [the police] to leave," Officer Reed remained near Meux's residence. *Id.* at 145. Within minutes, Bradley returned. Officer Reed made contact with Bradley and placed him under arrest. Bradley possessed ten .22 caliber hollow-point bullets—the type of bullet "designed to cause maximum impact"—and Meux's cell phone and car keys. *Id.* at 184.

[7] The State charged Bradley with Count I, Class B felony unlawful possession of a firearm by a serious violent felon; Count II, Class D felony strangulation; Count III, Class D felony domestic battery in the presence of a child under the age of sixteen; and Count IV, Class A misdemeanor interference with reporting a crime. The parties agreed to a bifurcated trial. At the conclusion of evidence in phase one of the trial, the trial court dismissed Counts II and IV. The jury was unable to reach a verdict on Count III. In phase two, the jury returned a guilty verdict on Count I—unlawful possession of a firearm by a serious violent felon.

[8] At sentencing, Bradley entered a guilty plea on Count III and was sentenced according to the plea agreement to six months to be served concurrently with the sentence imposed on Count I. On Count I, the trial court imposed the advisory sentence of ten years and, due to aggravating circumstances, enhanced the sentence to sixteen years in the Department of Correction. Bradley now

appeals his conviction and sentence for unlawful possession of a firearm by a serious violent felon.

# Discussion and Decision

## I. Sufficiency of the Evidence

### A. Standard of Review

When reviewing the sufficiency of the evidence to support a conviction, a reviewing court shall consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). The court neither reweighs the evidence nor reassesses the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Rather, the court must respect "the jury's exclusive province to weigh conflicting evidence." *Id.* (citation omitted). Therefore, the court should affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Drane*, 867 N.E.2d at 146-47 (citation omitted).

### B. Possession of a Firearm

Bradley concedes he qualifies as a serious violent felon based on a prior robbery conviction. *See* Appellant's Brief at 10. Bradley claims, however, the evidence is insufficient to support his conviction because the State failed to prove beyond a reasonable doubt he was in possession of a firearm.

"A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B

felony." Ind. Code § 35-47-4-5(c) (2013). "Possession of a firearm may be either actual or constructive." *Tate v. State*, 835 N.E.2d 499, 511 (Ind. Ct. App. 2005), *trans. denied*. "A person who has direct and physical control over a firearm has actual possession, whereas a person who has the intent and capability to maintain control over a firearm has constructive possession." *Id.*

[12]  Here, Bradley admits he controlled the firearm:

> [Defense Counsel:]  Now, how did it come about that you discovered this handgun in that room on January 3, 2014?
> [Bradley:]  When Dajuvetta asked me to remove the diapers from the cubbyhole.
> [Defense Counsel:]  And describe to the jury what happened.
> [Bradley:]  First, I opened the cabinet, I grabbed a box; and as I grabbed the box, it was – but I'm not knowing at the time that the gun was on top of the box so as I grabbed the box, it slid down, and I – caught it from hitting me.
> * * *
> [Defense Counsel:]  What did you do with the handgun after you – you discovered it out of the cubbyhole?  What did you do with it?
> [Bradley:]  I left it right there on the dresser.

Tr. at 338-39.  Moreover, Meux testified she saw Bradley holding and moving the firearm:

> [State:]  Was he holding the gun at the time?
> [Meux:]  And he was looking at it.
> * * *
> [State:]   What happened next?
> [Meux:]  Then he set it on a shelf in my room . . . .
> * * *
> [State:]  Are you claiming that the first time you ever saw this

gun was when you came out of the bathroom after brushing your teeth and your [sic] found Mr. Bradley holding the gun in your bedroom area?
[Meux:] Yes

*Id.* at 61-62, 84. This is evidence Bradley actually possessed the firearm. *See Williams v. State*, 834 N.E.2d 225, 229 (Ind. Ct. App. 2005) (noting a daughter's testimony stating she witnessed her father holding, and then attempting to hide, a firearm was sufficient evidence to support a finding of actual possession).

[13] Additionally, we note there were attempts to discredit the testimony of Meux and Bradley. It is exclusively for a jury to decide the weight of trial testimony and to judge the witnesses' credibility. *McHenry*, 820 N.E.2d at 126. We will not second guess those determinations. We conclude a reasonable fact-finder could find beyond a reasonable doubt the elements of unlawful possession of a firearm by a serious violent felon. Accordingly, the State presented sufficient evidence to sustain Bradley's conviction.

## II. Inappropriateness of Sentence

### A. Standard of Review

[14] Bradley also contends his sentence is inappropriate in light of the nature of the offense and his character. A reviewing court possesses the authority to revise a defendant's sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The burden is on the defendant to persuade the reviewing court the sentence is inappropriate.

*Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). It is not for the reviewing court "to achieve a perceived 'correct' result in each case[,]" but "[t]he principal role of appellate review should be to attempt to leaven the outliers . . . ." *Id.* at 1225. Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224.

## B. Bradley's Sentence

[15]  As to the nature of the offense, the advisory sentence is the starting point the legislature selected as an appropriate sentence for the crime committed. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*. Bradley was convicted of a Class B felony. Pursuant to Indiana Code section 35-50-2-5(a), a person who commits a Class B felony "shall be imprisoned for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years." The trial court sentenced Bradley to sixteen years in the Department of Correction.

[16]  Bradley argues there is nothing "egregious" or "exceptional" about the nature of the offense. Appellant's Br. at 14-15. He also attempts to diminish the nature of the offense by contending had it not been for his status as a serious violent felon, the possession of the firearm would have been legal.

[17] Nevertheless, the firearm "magically appeared" at Meux's apartment when Bradley dropped off his belongings. Tr. at 58. The firearm was loaded with .22 caliber hollow-point bullets—those designed to cause maximum damage. Bradley refused to remove the firearm from the premises. Further, he was arrested in possession of ten additional .22 caliber hollow-point bullets when he returned to the apartment. In committing this offense, he violated probation and risked the health and safety of those present in the apartment, including his infant child. This evidences an exceptional disregard for the law and for the safety of others.

[18] With respect to his character, Bradley asserts he had a positive attitude at trial; he was not considered to be a high risk to reoffend in his presentence report; he pleaded guilty to domestic battery; and he offered an apology to his family and the court. The trial court identified Bradley's guilty plea as a mitigating circumstance, but assigned it "diminished weight" because the State tried the case, there was a hung jury, and the plea came on the day Bradley was set to be sentenced for possession of a firearm by a serious violent felon. *Id.* at 399. Although we agree the record indicates Bradley maintained a positive attitude at trial, apologized to his family and the court, and was not labeled a high risk to reoffend in his presentence report, we also agree with the trial court's determination that Bradley's criminal history is a "predictor of future behavior." *Id.* at 398. Bradley's criminal history is significant for any individual, let alone a twenty-four year old. At the time of sentencing, his criminal history consisted of two juvenile referrals—including a true finding for

receiving stolen property, a Class D felony; two prior felony convictions for armed robbery, a Class B felony, and theft, a Class D felony; one probation violation; and one pending probation violation. This history cannot be ignored.

[19] Finally, Bradley argues even if the length of the sentence is appropriate, his placement at the Department of Correction for sixteen years is inappropriate. Under Appellate Rule 7(B), "[t]he place that a sentence is to be served is an appropriate focus for application of our review and revise authority." *Biddinger v. State*, 868 N.E.2d 407, 414 (Ind. 2007). The burden is on the defendant to persuade the court the *location* is inappropriate. *Id.* Here, Bradley contends he has a child to care for and therefore there are more appropriate options than the Department of Correction. Appellant's Br. at 17. However, he adds nothing more in support of this contention and the record indicates he does not provide Meux much, if any, assistance in the care of their child. Moreover, Bradley has not shown he can comply with terms of probation. Bradley fails to persuade us that placement in the Department of Correction is inappropriate.

[20] Ultimately, Bradley has a significant criminal history for his age and committed the instant offense while on probation. *See Teer v. State*, 738 N.E.2d 283, 292 (Ind. Ct. App. 2000) (upholding a defendant's sixteen-year sentence for unlawful possession of a firearm by a serious violent felon based on defendant's criminal history, probation violation, and a pending charge in another state), *trans. denied*. Moreover, Bradley was found in possession of a firearm in an apartment full of children. Given the nature of the offense, Bradley's character, and his careless disregard for the law and the safety of others, we are not

persuaded Bradley's sentence of sixteen years in the Department of Correction is inappropriate.

# Conclusion

[21] The evidence presented at trial was sufficient to support Bradley's conviction for unlawful possession of a firearm by a serious violent felon, and Bradley's sentence is not inappropriate. Bradley's conviction and sentence are therefore affirmed.

[22] Affirmed.

Vaidik, C.J., and Pyle, J., concur.