Michael CARNES and Leah J. Carnes,
Appellants (Defendants Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–283A37.

Court of Appeals of Indiana,
Second District.

July 23, 1985.

☞257

William F. Thompson, Jacquelyn Thompson, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Appellants Michael and Leah Carnes appeal their convictions for unlawful possession of marijuana (under Ind.Code § 35–48–4–11 (1982)) and for unlawful possession of methaqualone (under Ind.Code § 35–48–4–7 (1982)). Appellants were given a two-year,

---

**1.** Michael does not argue the sufficiency of the evidence to sustain his conviction for possession

suspended sentence, placed on a one-year probation, and ordered to perform one hundred hours of community service. The Carneses raise the following issues:

(1) whether the trial court erred in denying the Carneses' motion to suppress the controlled substances seized in the course of executing the search warrant;

(2) whether there was sufficient evidence to establish constructive possession of the marijuana by Leah [1] and of the methaqualone by Michael and Leah;

(3) whether the trial court erred in denying the Carneses' motion to dismiss;

(4) whether the trial court erred in denying the Carneses' motion for disclosure of the identity of the State's informant.

We find no error and affirm the convictions.

*Facts*

On October 16, 1981, a search warrant was issued for the residence at 3242 South Collier Street in Indianapolis. The warrant was issued on the affidavit of Police Officer Walton whose sworn statement read as follows:

"[A] controlled substance to wit: Marihuana Cannabis Sativa is being kept, used and sold at [above address] ... which is unlawful. Said residence is under the control of Mick Carnes. This affiant basis [sic] his belief on the following information: that a confidential, credible and reliable informant was personally inside the above stated address within the past seventy-two hours of October 16, 1981 and did there observe Marihuana being kept, used and sold."

Record at 238. The affidavit further described the informant's familiarity with marijuana and his reliability.

Officer Walton and two other officers served the warrant on October 16, 1981. From a position near the front door, Wal-

---

of marijuana.

ton saw a woman, whom he later identified as Leah Carnes, lying on the living room couch. He yelled to her that he was a police officer, entered through the front door, and advised her of the search warrant.

Michael Carnes arrived at the residence while Walton was talking to Leah Carnes. After being advised of the search warrant, Michael volunteered that there was marijuana in the refrigerator. In a search of the remainder of the residence, the officers found a package of methaqualone pills [2] and a small quantity of marijuana. Those controlled substances were found in the Carneses' bedroom in a package under a tray which rested on a small bench or table.

Michael was immediately arrested for unlawful possession of marijuana, and on November 19, 1981, the State charged him with unlawful possession of methaqualone. Leah Carnes was charged on November 19, 1981 with unlawful possession of both substances. Between October 16, 1981 and November 19, 1981, Walton attempted to persuade Michael to become an informant for him. Pending Michael's decision, Walton had withheld filing the additional charge against Michael and the charges against Leah. The defendants were convicted on all counts.

### I. Motion to Suppress: Probable Cause for Warrant

The Carneses object to the trial court's denial of their motion to suppress the substances seized pursuant to the search warrant. They attack the adequacy of the warrant on two premises:

A) the warrant was not supported by an adequate showing of criminal activity and

B) the factual information was too remote in time to allow a neutral magistrate to reasonably conclude that probable cause existed to search the residence.

### A. Showing of Criminal Activity

The court in *Layman v. State,* 407 N.E.2d 259 (Ind.App.1980) analyzed the approach of a reviewing court faced with the sufficiency of the factual basis presented for the issuance of a search warrant as follows:

"Our approach is two-fold. First we identify the questions a court must ask in determining whether a search is reasonable under the circumstances, *i.e.,* whether probable cause exists for a warrant to issue. Second, we apply the standard set out by the Indiana Supreme Court in determining whether enough facts are presented to enable a magistrate to answer these questions independently and apart from the conclusions of the affiant.

While the quantity and nature of the constituent elements necessary to establish probable cause are inextricably related to each given set of facts, there are two basic questions pertinent to the determination of probable cause for a search under any set of facts: (1) whether the particular items sought to be seized are sufficiently connected with criminal activity and (2) whether the items are to be found in a particular place. If sufficient facts are presented so that a neutral and detached magistrate can make an affirmative response to these questions, probable cause may be presumed to exist thus making the issuance of the search warrant reasonable."

407 N.E.2d at 263. (citations omitted)

In the instant case, Walton related that the informant had personally observed marijuana being "kept, used and sold" at 3242 South Collier, Indianapolis, Indiana, the residence of Michael and Leah Carnes. Carneses argue the informant's allegation that marijuana was seen being "kept, used and sold" is conclusory in nature.

■ An affidavit for a search warrant must apprise the magistrate of the underlying facts and circumstances which tend to

---

2. Methaqualone is a Schedule II controlled substance. Ind.Code § 35–48–2–6(e)(1) (1982).

show probable cause exists for the search. *Flaherty v. State,* 443 N.E.2d 340 (Ind. App.1982); *Layman v. State,* 407 N.E.2d 259 (Ind.App.1980). Those attestations upon which the probable cause is premised must be attestations of fact and not mere conclusions of the affiant. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Short v. State,* 443 N.E.2d 298 (Ind.1982).

■ The informant's statement in the subject affidavit is not conclusory in the sense that term was used in *Aquilar.* In *Aquilar,* the court found inadequate an officer's statement that "affiants have received reliable information from a credible person and do believe," that narcotics are stored in a home. 378 U.S. at 109, 84 S.Ct. at 1511. The conclusory statement gave the magistrate no basis for making a disinterested determination regarding probable cause. In Officer Walton's affidavit, however, the informant stated he personally observed marijuana being "kept, used and sold". The warrant was issued upon those underlying circumstances, not upon any conclusions drawn therefrom by the affiant or the informant, as occurred in *Aquilar.*

The underlying facts provided the issuing authority in the present case were sufficient for a determination of probable cause.

### B.

The Carneses' second objection to the affidavit for probable cause is that the factual information provided is too remote in time to support the finding of probable cause to search. The affidavit recited that the informant had seen marijuana in the Carneses' residence within seventy-two hours of the date of the affidavit and the issuance of the warrant, October 16, 1981.

Our supreme court rejected an identical argument in *Tinnin v. State,* 275 Ind. 203, 416 N.E.2d 116 (1981). In *Tinnin,* the affidavit was dated and issued August 1, 1978, and stated that within the past seventy-two hours of August 1, 1978, the informant had personally observed the accused in possession of a substance he believed to be heroin. The court held seventy-two hours is a period of time for which it is reasonable to believe the contraband would still be present in the home.[3]

■ Here, too, the relevant observation was within seventy-two hours of the application for a warrant. Thus, the issuing authority's finding that probable cause existed for the search warrant was not based on factual information too remote to support a finding of probable cause. The trial court properly denied Carneses' motion to suppress the substances gathered in the search of their residence.

### II. Sufficiency of the Evidence

The Carneses next question whether the evidence presented constitutes "substantial evidence of probable value" supporting the verdict against them.[4] We hold that it does.

■ Constructive possession is defined as the capability and intent to maintain control and dominion over the contraband. *Thomas v. State,* 260 Ind. 1, 291 N.E.2d 557, 558 (1973). Because constructive possession may be proved by circumstantial evidence, *Corrao v. State,* 154 Ind.App. 525, 290 N.E.2d 484 (1972), proof of a possessory interest in the premises in which contraband is found is adequate to show the *capability* to maintain control and dominion over the contraband. So, too, exclu-

---

**3.** The court implied a different result might have been reached if the substances had allegedly been seen on the person of the accused, rather than in his home. 416 N.E.2d at 120.

**4.** Our standard for reviewing sufficiency claims is firmly established; on appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state,

together with all reasonable and logical inferences to be drawn from that evidence. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Davenport v. State,* 464 N.E.2d 1302 (Ind.1984); *McNary v. State,* 460 N.E.2d 145 (Ind.1984); *Burgin v. State,* 431 N.E.2d 864 (Ind.App.1982).

sive possession of those premises reasonably supports the inference the exclusive possessor had the *intent* to maintain control and dominion over the contraband, i.e., the exclusive possessor knows of the contraband's presence and of its forbidden character. *Watt v. State*, 412 N.E.2d 90 (Ind.App.1980).

However, if the possession of the premises is not exclusive, knowledge of the presence of the substance and its character may not be reasonably inferred from the possession alone. Rather, the inference must be supported by additional circumstances. *Davenport v. State*, 464 N.E.2d 1302 (Ind.1984).

■ Numerous additional circumstances have been deemed sufficient to allow a trier of fact to reasonably draw the requisite inference of the defendant's knowledge of the presence and character of the contraband. Generally, the "additional factors," the "further evidence," or the "incriminating statements or circumstances tending to buttress such an inference" include:

1) Incriminating statements by the defendants: *see, e.g., Griffin v. State*, 259 Ind. 205, 285 N.E.2d 644 (1972) (defendant admitted owning the bottle containing the contraband); *Mills v. State*, 177 Ind.App. 432, 379 N.E.2d 1023 (1978) (reference to mock drug containers implied knowledge of the drugs found); *Thurman v. State*, 162 Ind.App. 267, 319 N.E.2d 151 (1974) (defendant admitted contraband was his).

2) Attempted flight or furtive gestures: *see, e.g., Davenport v. State*, 464 N.E.2d 1302 (Ind.1984); *Gooden v. State*, 401 N.E.2d 93 (Ind.App.1980); *Hutcherson v. State*, 178 Ind.App. 8, 381 N.E.2d 877 (1978); *Moss v. State*, 165 Ind.App. 502, 333 N.E.2d 141 (1975).

3) A manufacturing setting: *see, e.g., Ledcke v. State*, 260 Ind. 382, 296 N.E.2d 412 (1973) (marijuana processing); *Parsons v. State*, 431 N.E.2d 870 (Ind.App.1982) (heroin "mix" found).

4) Proximity of the defendant to the drugs: *see, e.g., Thomas v. State*, 260 Ind. 1, 291 N.E.2d 557 (1973); (open packet of heroin on table at which defendant seated); *Thurman v. State*, 162 Ind.App. 267, 319 N.E.2d 151, 158 (1974) ("It is factually unlikely that 85 packets of drugs located beneath a pillow upon which one's head rested would go unnoticed by that person.")

5) Drugs are in "plain view": *see, e.g., Thomas v. State*, 260 Ind. 1, 291 N.E.2d 557 (1973), *Burgin v. State*, 431 N.E.2d 864, (Ind.App.1982); *Ludlow v. State*, 302 N.E.2d 838, (Ind. App.1973), *rev. on other grounds*, 262 Ind. 266, 314 N.E.2d 750 (1974).

6) Location of contraband in close proximity to items owned by the defendant; *see, e.g., Davenport v. State*, 464 N.E.2d 1302 (Ind.1984) (drugs found in dresser with man's watch and several syringes); *Burgin v. State*, 431 N.E.2d 864 (Ind.App.1982) (drug found in defendant's purse); *Watt v. State*, 412 N.E.2d 90 (drugs in defendant's dresser drawer).

In each of these instances of "additional circumstances" exists the probability that the presence and character of the contraband was noticed by the defendant. Accordingly, the listed circumstances are not exhaustive. Other circumstances could just as reasonably demonstrate the requisite knowledge. One such "other" circumstance is found in the instant record—the place where the contraband is found.

In *Watt v. State*, 412 N.E.2d 90 (Ind.App. 1980), a man and a woman who shared a bedroom were convicted of possession of drugs found in the partially open drawer of a dresser containing men's clothing and in a box atop that dresser in the bedroom. This court affirmed the convictions. In *Mason v. State*, 271 Ind. 316, 392 N.E.2d 806 (1979) this court affirmed convictions of possession of heroin and marijuana. The contraband was in a purse found on the floor in the open doorway of a bedroom closet. The sole contents of the purse was

the contraband and paraphernalia. The defendant was a male, occasional live-in, who, at the time of the search, was "living-in" and sharing the regular female tenant's bedroom in which the contraband was found.

■ Implicit in these affirmances is the recognition by the courts that the nature of the place where the contraband is found may be such that it would defy logic and human experience, and force upon the courts an unwarranted naivete, to believe that adults with a possessory interest in the premises were unaware of the presence of the contraband. Contraband which, as in the instant case, is found within the residence without any indicia of exclusivity as between the joint occupants, fits within this rationale.

■ The nature of the place where the contraband was found is an additional circumstance in the instant case as to the marijuana found in the container in the kitchen refrigerator. Human experience tells us that adult members of a household are in and out a kitchen refrigerator as a matter of course. To paraphrase the words of Judge White in *Thurman*, it is factually unlikely that a large container of marijuana located in a kitchen refrigerator in the residence of adults would go unnoticed by those adults. 319 N.E.2d 15 158.

■ The same inference is available regarding the contraband found in a package under a tray sitting upon a bench or table in the bedroom. The Carneses were the exclusive occupants of the bedroom where the contraband was found.[5] It was their private place. Here, as in *Watt* and *Mason*, the contraband was found in a place where a reasonable person could reasonably infer from the evidence that neither of the two adults was trying to hide contraband from the other. It was not found in a place which was held by one of the bedroom's occupants to the exclusion of the other. Thus, under *Watt* and *Mason*, we conclude the circumstances of the place sufficiently buttresses the evidence of possession to support the inference of the Carneses' knowledge of the presence and character of the contraband. The circumstances lead to only one conclusion, that both Michael and Leah Carnes knew of the presence of the contraband and that their efforts to "hide" it could only have been designed to keep the contraband out of sight of their children or of casual visitors.

### III. Motion to Dismiss: Oppressive Conduct

■ The Carneses maintain the trial court erred in denying their motion to dismiss the charges against them because Walton's conduct was "so oppressive as to offend a sense of justice and be against public policy." Appellants' Brief at 23. Their appellants' brief, however, consists of conclusory allegations, none of which are supported by citation to any authority. For this reason, their brief does not comply with Ind.Rules of Procedure, Appellate Rule 8.3(A)(7), which reads in pertinent part:

"The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."

As such their argument fails to overcome the presumption the trial court correctly decided the issues before it, and we would be justified in affirming for that reason.

Considering the merits of the issue, however, the uncontradicted evidence is that Walton delayed filing any charges against Leah and the charge of possession of methaqualone against Michael, while Walton

---

5. Leah argues she was not an occupant of the bedroom due to injuries which kept her confined to the living room couch. However, her argument is totally unsupported by the evidence at trial. Rather, the only evidence is the bedroom contained adult male and female clothing. A reasonable fact finder could conclude from this evidence that the bedroom was exclusively occupied by the only adults in residence, Leah and Michael Carnes.

attempted to persuade Michael to become an informant. The statements made by Walton implied that if Michael did not agree to become an informant, the charges against Leah would be filed, as well as an additional charge of possession of methaqualone against Michael. Upon Michael's refusal, Walton proceeded to file the charges against Leah and the additional charge against Michael.

■ Essentially, the Carneses argue their due process rights have been violated by the coercive conduct of Officer Walton. However, we conclude that where probable cause exists to initiate criminal charges against a defendant, a due process violation does not occur when an officer threatens to file those charges. Once the marijuana and methaqualone were discovered pursuant to a valid search warrant, the prosecutor had probable cause sufficient to charge both Michael and Leah of constructive possession of the substances.

Because the police officers were fully justified in charging both Michael and Leah, harm did not result to either appellant from Walton's threats. A threat to do what the law permits is not tantamount to a due process violation.

■ We find the cases where threats are made in order to induce a plea of guilty somewhat analogous to the present situation. If the government may, as part of a plea negotiation, inform the defendant of its intention to reindict him on a more serious charge if he refuses to plead guilty to the charge contained in the original indictment, *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), *State v. LaMarr,* 231 Ind. 500, 109 N.E.2d 457 (1952), a law enforcement agent may, without infringing any right of the accused, proceed to file the maximum charges if the defendant decides against acting as an informant. If it is not unlawful coercion to threaten to indict members of someone's family to induce a guilty plea by a defendant, *U.S. v. Horton,* 646 F.2d 181, 187 (5th Cir.1981), it cannot be said to be a violation of a person's due process right to thereafter filing charges against

his spouse if he does not consent to aid in the ferreting out of criminal conduct.

Although we do not condone Walton's conduct, we will not decide what law enforcement tactics, aside from those which are constitutionally and statutorily prohibited, should or should not be employed. Officer Walton's conduct did not encroach upon the Carneses' due process rights. Therefore, we find no error in the trial court's decision to deny the Carneses' motion to dismiss the charges against them.

## IV. Disclosure of Identity of State's Informant

The Carneses claim the trial court erred in refusing to require the State to disclose the identity of the informant, the source of the underlying facts in the affidavit upon which the search warrant was issued.

■ The Carneses erringly suggest in their appellants' brief that the burden is upon the State to demonstrate reasons for the nondisclosure of a criminal informer. Rather, the general policy of Indiana is to prevent the disclosure of an informant's identity unless the defense can demonstrate that disclosure is relevant and helpful to the defense or is necessary to a fair trial. *Powers v. State,* 440 N.E.2d 1096 (Ind.1982); *Ryan v. State,* 431 N.E.2d 115 (Ind.1982). To effectuate this policy, the courts place the burden upon the defendant to demonstrate his need for disclosure. *Lewandowski v. State,* 271 Ind. 4, 389 N.E.2d 706, 709 (1979).

■ The Carneses' assertion that disclosure was necessary to ascertain whether an informer in fact existed is not persuasive. Walton related the informant's tip in an affidavit made upon oath which provides sufficient assurance that the facts stated therein are true. *See Watt v. State,* 412 N.E.2d 90, 95 (Ind.App.1980). Furthermore, as a practical matter, if disclosure is necessary to discover if an informant exists, no informant's identity would remain confidential. Without anonymity, citizens would hesitate to communicate their knowledge of the commission of crimes to law enforcement officials.

Appellants made no showing that disclosure of the informant's identity would be relevant or helpful in preparing their defense or essential to a fair determination of the case. Without such a showing, the Carneses cannot argue the trial court improperly refused to compel disclosure of the informant's identity.

For the reasons stated above, we affirm Leah's conviction under Ind.Code § 35–48–4–7 (1982) for possession of methaqualone and her conviction under Ind.Code § 35–48–4–11 (1982) for possession of marijuana. We affirm Michael's conviction under § 35–48–4–7 for possession of methaqualone and affirm his conviction under § 35–48–4–11 for possession of marijuana.

BUCHANAN, C.J., and SULLIVAN, J., concur.