## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 19 2016, 8:22 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Paula M. Sauer
Danville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hobert C. Lamb,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 19, 2016<br><br>Court of Appeals Case No.<br>32A04-1506-CR-539<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Karen M. Love,<br>Judge<br><br>Trial Court Cause No.<br>32D03-1502-F5-18 |

**Robb, Judge.**

# Case Summary and Issues

Following a jury trial, Hobert Christopher Lamb was convicted of possession of methamphetamine as a Level 6 felony, possession of marijuana as a Class B misdemeanor, and possession of paraphernalia as Class A misdemeanor. Lamb appeals, raising two restated issues: (1) whether the State presented sufficient evidence to support his conviction for possession of methamphetamine; and (2) whether the trial court abused its discretion by rejecting his proposed jury instruction on constructive possession. Concluding the evidence was sufficient and any error in the instruction of the jury was harmless, we affirm Lamb's convictions.

# Facts and Procedural History

Venkata Nattam manages the Wingate and Super 8 motels in Plainfield, Indiana. In February 2015, Nattam hired Lamb to install floor tile in the stairwells of the Wingate. Nattam compensated Lamb by providing a complimentary room at the Super 8 for the duration of the project. Lamb was the only person who had permission to stay in the room and was the only person given a key.

On February 21, 2015, a motel employee informed Nattam she detected the odor of burnt marijuana emanating from Lamb's room. Nattam called the room to remind Lamb that smoking was not permitted, but Lamb's employee

Jason answered the phone.[1] Jason laughed and hung up, so Nattam called the police.

[4] Officers Zach Gadawski and Justin Walker of the Plainfield Police Department were dispatched to the Super 8 in reference to a marijuana odor. As the officers climbed the stairs leading to the second floor, they detected the odor of burnt marijuana, which grew stronger in the hallway. The odor was the strongest outside the door of Room 209, so the officers knocked on the door. Lamb answered approximately thirty seconds later and invited the officers inside. Lamb was the only person in the room.

[5] Officer Gadawski advised Lamb his room smelled strongly of burnt marijuana. Lamb stated he did not know why the room smelled of marijuana and claimed he was asleep when they knocked. Officer Gadawski asked Lamb if anyone else was staying the room. Lamb stated "to his knowledge" Jason and a woman named Heather had stayed the night before. State's Exhibit 1. Lamb also told Officer Gadawski that Jason had been "hollering the police were coming" and left just before the officers arrived. *Id.* While speaking with Lamb, Officer Gadawski noticed in plain view on the nightstand a small plastic baggie with one end tied off and the bottom ripped out, which he knew through his training and experience to be associated with narcotic use. Officer Gadawski asked Lamb what was in the baggie; Lamb said he "had no idea."

---

[1] Nattam knew he was speaking with Jason because he had seen Jason in the lobby and had told Jason he was not allowed to stay in Lamb's room.

*Id.* Officer Gadawski then asked Lamb for consent to search the room, but Lamb declined. "I was asleep, so I don't know what's in here, man. . . . I really don't know who's been in here, who ain't been in here," Lamb explained. *Id.* Nattam confirmed there had been a variety of people "coming and going" from Lamb's room. Transcript at 235-36.

[6] The officers obtained a search warrant for the room and executed the warrant later that day.[2] First, Officer Brad Elston of the Plainfield Police Department conducted a sweep of the room with his K-9 partner. The dog indicated the presence of narcotics in several areas of the room. Then, Officers Gadawski and Elston conducted the search, focusing on the areas indicated by the dog. Lamb was detained in the hallway with Officer Walker during the search. Lamb asked Officer Walker "if possession of marijuana is a ticketable offense in Indiana," and told Officer Walker "if they find anything under the bed it's not mine." *Id.* at 422. Lamb also stated "something to the effect of I just don't see this ending up well." *Id.*

[7] Officers Gadawski and Elston uncovered methamphetamine, marijuana, and paraphernalia throughout the room. The room had two beds, one of which appeared undisturbed when the officers entered. In the bed that Lamb had been

---

[2] A second search warrant was issued in this case. While searching the room, Officer Gadawski cut himself, so the police obtained a warrant to test Lamb's blood for bloodborne pathogens. Tr. at 33. Lamb, in his brief and reply brief, erroneously states the search warrant was issued to test his blood for drugs. *See* Brief of Appellant at 17; Reply Brief at 9-10. We remind counsel of her duty of candor toward this court under Indiana Professional Conduct Rule 3.3.

sleeping in, they discovered a broken glass pipe with burnt residue. They found six syringes under the mattress of the other bed and a second glass pipe between the sheets. In the dresser and the area surrounding it, they found clothing, raw marijuana, the burnt end of a marijuana cigarette, several more ripped plastic baggies, and an Altoid tin with a straw and white residue inside.[3] They discovered rolling papers in the nightstand, as well as a prescription bottle bearing Lamb's name. On the toilet in the bathroom, the officers noticed a residue suggesting something had been flushed. In a trashcan next to the toilet they discovered a syringe buried in the trash. Next to the sink, they found a toiletry bag that contained a toothbrush, an electric razor, an extension cord, and a plastic baggie of suspected methamphetamine. Subsequent forensic testing confirmed the plastic baggie contained methamphetamine.

[8] The room was cleaned prior to Lamb checking in on February 11, 2015, but the room had not since been cleaned. When the search concluded, Officer Gadawski informed Lamb of what they had found. Lamb admitted the marijuana was his but denied having knowledge of the other items. On February 23, 2015, the State charged Lamb with possession of methamphetamine as a Level 6 felony, possession of methamphetamine as a Level 5 felony, possession of marijuana as a Class B misdemeanor, and possession of paraphernalia as Class A misdemeanor. The trial court granted

---

[3] Officer Gadawski testified straws are commonly used to ingest "powdery substance[s]" through a drug user's nose, "whether it be pills, cocaine, meth." Tr. at 309-10.

the State's motion to dismiss the Level 5 felony on April 7, 2015, and a jury trial was held the following week. The jury found Lamb guilty of the remaining charges. The trial court ordered Lamb to serve an aggregate sentence of 730 days executed in the Department of Correction. This appeal followed.

# Discussion and Decision

## I. Sufficiency of Evidence

### A. Standard of Review

[9] Lamb contends the evidence was insufficient to support his conviction for possession of methamphetamine. When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We neither reweigh the evidence nor assess the credibility of witnesses. *Id.* Unless no reasonable fact-finder could conclude the elements of the crime were proven beyond a reasonable doubt, we will affirm the conviction. *Id.*

### B. Possession of Methamphetamine

[10] A person commits possession of methamphetamine if he knowingly or intentionally possesses methamphetamine without a valid prescription. Ind. Code § 35-48-4-6.1. Lamb argues the State failed to prove he possessed the methamphetamine found in the motel room.

[11]     We have long recognized a conviction for a possessory offense may rest upon proof of either actual or constructive possession. *Goodner v. State*, 685 N.E.2d 1058, 1061 (Ind. 1997). A defendant constructively possesses an item when he has both the capability and the intent to maintain dominion and control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). Proof of a possessory interest in the premises where the item is found satisfies the capability prong, regardless of whether possession of the premises is exclusive. *Gee v. State*, 810 N.E.2d 338, 340-41 (Ind. 2004). As for the intent prong, if a defendant's possession of the premises is non-exclusive, the inference of intent to maintain dominion and control must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the item and its presence. *Id.* at 341. Recognized "additional circumstances" include: (1) incriminating statements; (2) attempted flight or furtive gestures; (3) a setting that suggests drug manufacturing; (4) the proximity of the item to the defendant; (5) whether the item was found in plain view; and (6) the mingling of the item with other items the defendant owns. *Id.*

[12]     Lamb properly concedes he had a possessory interest in the motel room and thus had the capability to maintain dominion and control over the methamphetamine. On appeal, Lamb contends his possession of the room was non-exclusive and the State failed to show additional circumstances demonstrating his knowledge of the methamphetamine. We agree Lamb's possession of the room was non-exclusive but conclude the evidence presented

at trial supplied additional circumstances that sufficiently demonstrated Lamb's intent to maintain dominion and control over the methamphetamine.

[13]    Lamb argues the evidence established at least two people had been staying in the room and the State presented no evidence regarding which items in the room belonged to Lamb. When the police arrived, however, Lamb was the only person in the room and was in close proximity to the methamphetamine. The sink was in the same area as the beds, in between Lamb's bed and the door. The sink was not in the bathroom, so Lamb could see the toiletry bag from where he was lying. Lamb was furthermore the only registered guest for Room 209. When the police conducted the search, he had been staying in the room for ten days, and the second bed appeared undisturbed, as if no one had slept in it during that time. Given these facts, the jury could reasonably infer the personal items in the room belonged to Lamb and the methamphetamine was thus mingled with Lamb's possessions. *See Tate v. State*, 835 N.E.2d 499, 511 (Ind. Ct. App. 2005) (finding it reasonable to infer firearms found in a motel room were mingled with the defendant's possessions because the defendant was staying in the motel room at the time, notwithstanding the fact that he was sharing the room with several others), *trans. denied*.

[14]    Lamb also made incriminating statements. While Officers Gadawski and Elston searched the room, Lamb asked Officer Walker "if possession of marijuana is a ticketable offense in Indiana." Tr. at 422. He also told Officer Walker "if they find anything under the bed it's not mine," and stated "something to the effect of I just don't see this ending up well." *Id.* The

officers found six syringes under the mattress of the bed that appeared undisturbed and a glass pipe under the other mattress. Lamb argues his incriminating statements "linked him to the marijuana, not the methamphetamine," Reply Br. at 2, but we cannot agree. Syringes are not used to ingest marijuana, and the pipe the police found in the bed could have been used to smoke either marijuana or methamphetamine. *See* Tr. at 309. As Officer Gadawski testified, syringes are typically used to inject "[c]ocaine, methamphetamine, heroin, anything that can be melted into a liquid and introduced in the body." *Id.* We therefore cannot agree Lamb's incriminating statements linked him only to the marijuana.

[15] The jury could reasonably infer Lamb's guilt from the evidence presented at trial, and we consider the bulk of Lamb's argument on this issue—regarding how many toothbrushes were found in the room, for instance—merely a request for this court to reweigh the evidence. Lamb had a possessory interest in the motel room, and the evidence supplied additional circumstances that sufficiently demonstrated his intent to maintain dominion and control over the methamphetamine. The evidence was sufficient to support Lamb's conviction for possession of methamphetamine.

## II. Jury Instructions

### A. Standard of Review

[16] Lamb also contends the trial court abused its discretion by rejecting his proposed jury instruction on constructive possession. "Instructing a jury is left

to the sound discretion of the trial court and we review its decision only for an abuse of discretion." *Washington v. State*, 997 N.E.2d 342, 345 (Ind. 2013). In determining whether a jury instruction was properly refused, we consider: "(1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given." *McCowan v. State*, 27 N.E.3d 760, 763-64 (Ind. 2015) (citation omitted). But reversal is not warranted unless the instructions as a whole misstate the law or mislead the jury. *Wallen v. State*, 28 N.E.3d 328, 331 (Ind. Ct. App. 2015), *trans. denied*. An error in refusing an instruction is harmless "where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind. 2001).

## B. Final Instruction No. 9B

As stated above, where a defendant has non-exclusive possession of the premises where an item is found, the inference of intent to maintain dominion and control of the item must be supported by "additional circumstances" pointing to the defendant's knowledge of the nature of the item and its presence. *Gee*, 810 N.E.2d at 341. Our supreme court has identified various examples of "additional circumstances," and has supplied a non-exhaustive list of the types of evidence which would tend to show a defendant's knowledge. *Supra*, at ¶ 11; *see also Gray*, 957 N.E.2d at 174-75 (stating the list is "not exhaustive as other circumstances could just as reasonably demonstrate requisite knowledge") (citing *Carnes v. State*, 480 N.E.2d 581, 586 (Ind. Ct. App.

1985), *trans. denied*). Lamb's proposed jury instruction on constructive possession included the list of recognized "additional circumstances." Appendix at 130.

[18] The trial court refused to include the list in the instruction, fearing its inclusion would amount to improper comment on the evidence. Tr. at 476-77. Accordingly, Final Instruction No. 9B read as follows:

> Possession of something may take two forms. One can possess an item directly, meaning that he or she has actual physical control over the item. Or, one can possess something constructively, meaning that he or she has the capability and intent to possess the item, even though actual physical control is absent. When possession of the premises on which drugs or paraphernalia is not exclusive [sic], the inference of intent to maintain dominion and control over the items must be supported by additional circumstances pointing to the accused's knowledge of the nature of the drugs and/or paraphernalia and their presence in his hotel room.

App. at 202. Rather than include the list of recognized "additional circumstances," the trial court permitted both sides to argue the existence of "additional circumstances" during closing arguments. Tr. at 476-77.

[19] Although we agree with Lamb that his proffered instruction listing the recognized "additional circumstances" correctly stated the law, that the evidence supported giving the instruction, and that the substance of the instruction was not covered by other instructions given, we cannot conclude the trial court committed reversible error. The final version of the instruction did

not misstate the law or mislead the jury regarding the requirement of "additional circumstances." Lamb was permitted to argue the absence of "additional circumstances," and we have already concluded the State presented sufficient evidence to support Lamb's conviction. In short, the error was harmless.

# Conclusion

[20] The evidence was sufficient to support Lamb's conviction for possession of methamphetamine, and the trial court did not commit reversible error by rejecting Lamb's proposed jury instruction. We therefore affirm Lamb's convictions.

[21] Affirmed.

Barnes, J., and Altice, J., concur.