## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 28 2016, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Houdek
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

French Tibbs,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 28, 2016

Court of Appeals Case No.
49A02-1511-CR-1956

Appeal from the Marion Superior Court

The Honorable Shatrese M. Flowers, Judge

Trial Court Cause No.
49G20-1311-FD-72537

**Najam, Judge.**

## Statement of the Case

French Tibbs appeals his conviction for dealing in marijuana, as a class D felony, following a jury trial. He raises one issue on appeal, namely, whether the State presented sufficient evidence to support his conviction.

We affirm.

## Facts and Procedural History

In 2013, Tibbs owned and operated a variety store located in a residential area at 2623 North White Avenue in Indianapolis. The store was in a larger building that was owned by Tibbs' father. On November 7, 2013, Detective Scott Brimer of the Indianapolis Metropolitan Police Department ("IMPD") Metro Drug Task Force and his team executed a search warrant at Tibbs' variety store. The IMPD had obtained the search warrant based on information provided by a confidential informant who had engaged in three separate drug buys from the variety store. The confidential informant was credible and reliable as she had "provided information and/or evidence on at least three separate occasions that [had] lead [sic] to at least three separate seizures, arrests, and convictions." State's Ex. 1 at 4.

On November 7, Detective Brimer entered Tibbs' store and encountered Tibbs, who was standing in the customer area of the store, which was a common area that could be accessed by the general public. Detective Brimer proceeded to the back room of the store, which was the employee area, while other IMPD officers secured Tibbs. The employee area was partitioned off from the

customer area by a door and a plexiglass wall with a hole in it. A black curtain was placed on the plexiglass wall such that the employee area would be obscured from view by anyone in the customer area. The door to the employee area was open at the time of the search, and Detective Brimer walked through the door and saw Vino Mason standing by one of two tables in the room. Vino Mason was not an employee of the store, and he was the only person besides Tibbs in the store at the time of the search.

[5] The employee area had two tables and a refrigerator. One table held a television, a telephone, a wallet and other objects. The second table held several soda bottles and cans, cleaning products, a clear glass jar with 19.54 grams of marijuana in it, and a digital scale next to the jar. On the floor below the second table lay a white, opaque plastic bag with the words "Finish Line" on it. The Finish Line bag contained a Ziplock bag with 68.12 grams of marijuana in it. The officers found a second digital scale in a box on a ledge by the plexiglass wall. The refrigerator contained a bottle with pills containing different controlled substances.

[6] The officers arrested both Tibbs and Mason. During the search incident to Tibbs' arrest, Detectives Wolfe and Brimer found over $1000 in cash on Tibbs' person. Tibbs stated to Detective Brimer that the money was the proceeds from the store and was used to pay the store's bills. He stated that the store did not have a cash register, nor did he keep any receipts from store sales. Tibbs stated that he kept the store's money in a box, but the officers did not find any such box in their search of the store.

[7] On November 7, the State charged Tibbs with count I, dealing in marijuana, as a Class D felony; count II, possession of marijuana, as a Class D felony; count III, dealing in a controlled substance, as a Class B felony; and count IV, possession of a controlled substance, as a Class D felony. At Tibbs' August 26 to August 27 jury trial, the State presented the testimony of Detective Jeremy Ingram, who was involved in the search in this case and had twelve years of experience investigating drug crimes. Detective Ingram testified that, in his experience, variety stores can be used as a front for drug trafficking. He also testified that, while drug dealers often use digital scales to weigh drugs, he has never encountered a drug user or buyer who carries a scale to double check the quantity of drugs he has bought. Detective Brimer testified that the hole in the plexiglass wall between the customer area and the employee area was "where they can conduct their transactions like you would see in a bank or a store in a high-crime area." Tr. at 59.

[8] Following the trial, the jury found Tibbs guilty of counts I and II and not guilty of counts III and IV. At sentencing, the trial court merged count II with count I and sentenced Tibbs to two years in prison, with one year suspended to probation and one year executed through community corrections. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[9] Tibbs maintains that the State failed to provide sufficient evidence to support his conviction. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *See, e.g.*, *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010). We consider only the probative evidence and reasonable inferences therefrom that support the conviction, *Gorman v. State*, 968 N.E.2d 845, 847 (Ind. Ct. App. 2012), *trans. denied*, and we "consider conflicting evidence most favorably to the trial court's ruling," *Wright v. State*, 828 N.E.2d 346, 352 (Ind. 2005). We affirm if the probative evidence and reasonable inferences drawn from that evidence "could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Jackson*, 925 N.E.2d at 375.

## *Possession*

[10] To prove Tibbs committed the crime of dealing marijuana, as a Class D felony, the State had to prove that Tibbs (1) possessed marijuana (2) in an amount of more than thirty grams but less than ten pounds (3) with the intent to deliver the marijuana. Ind. Code § 35-48-4-10(b)(1)(B) (2013). A person actually possesses contraband when he has direct physical control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). However,

> [w]hen the State cannot show actual possession, a conviction for possessing contraband may rest instead on proof of constructive possession. A person constructively possesses contraband when

the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. A trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item. We allow this inference even when that possessory interest is not exclusive.

A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive. When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item. We have previously identified some possible examples, including (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns.

A defendant's proximity to contraband "in plain view" . . . will support an inference of intent to maintain dominion or control. In addition to being in plain view, however, the contraband's incriminating character must be immediately apparent. Whether the incriminating character of contraband was immediately apparent depends on an analysis similar to the one we use to determine the admissibility of evidence seized in a warrantless search under the plain view doctrine. It does not take much to recognize the incriminating character of marijuana.

*Id*. at 174-75 (internal quotations and citations omitted).

[11] The "additional circumstances" from which a person's knowledge of the presence and character of contraband can be inferred are not limited to those specifically outlined in *Gray*, above. Rather, "[o]ther circumstances could just as reasonably demonstrate the requisite knowledge," such as the nature of the place where the contraband is found. *Carnes v. State*, 480 N.E.2d 581, 586-87 (Ind. Ct. App. 1985). That is, the place where the contraband is found "may be such that it would defy logic and human experience, and force upon the courts an unwarranted naivete, to believe that adults with a possessory interest in the premises were unaware of the presence of the contraband." *Id*. at 587.

[12] Here, none of the drugs were found on Tibbs' person, so the State could not show actual possession. Moreover, we cannot infer that Tibbs had constructive possession of the contraband simply because he owned and operated the store. Tibbs' interest in the property was not exclusive given that his father owned the building in which the store was located and another person, Mason, was in the employee area at the time of the search. Therefore, while Tibbs' possessory interest in the premises is sufficient to show his capability to possess the contraband, we must look at additional circumstances to determine whether an inference exists to show that he intended to possess the contraband. *Id*.

[13] There was sufficient evidence from which a trier of fact could infer that Tibbs intended to possess the marijuana discovered at the store. Tibbs was in close proximity to the marijuana, and the 19.54 grams of marijuana in the glass jar were in plain view. He was standing in the adjoining customer area and the door to the employee area was open. As the store owner and the only

employee in the store, it is reasonable to infer that Tibbs frequented the employee area. *Carnes*, 480 N.E.2d at 587 (holding defendant's knowledge of the contraband could be inferred from the fact that it was located in the kitchen refrigerator and "[h]uman experience tells us that adult members of a household are in and out a kitchen refrigerator as a matter of course"). In the middle of the employee area, the table held the clear glass jar that contained a green leafy substance easily identifiable as marijuana. Also sitting on the table in plain view was a digital scale. Finally, the black curtain over the plexiglass divider between the customer area and the employee area suggests that Tibbs intended to conceal the activities in the employee area.

[14] Further, while the 68.12 grams of marijuana contained in the Finish Line bag were not "in plain view" because the bag was opaque, *see, e.g.*, *Gee v. State*, 810 N.E.2d 338, 342-43 (Ind. 2011), nonetheless the totality of the circumstances here create a reasonable inference that Tibbs had knowledge of the marijuana in the Finish Line bag. Again, Tibbs was in close proximity to the employee area where the bag was located, and other marijuana and a digital scale were in plain view in that room. And Tibbs had a large amount of cash on his person and no receipts or other documentation to confirm his statement that the money was from store sales. Thus, the nature of the place where the drugs were found (i.e., the employee area) combined with the other relevant circumstances are sufficient to show that Tibbs constructively possessed the entirety of the marijuana found in that area. *Carnes*, 480 N.E.2d at 587.

## *Intent to Deliver*

[15] To prove Tibbs was dealing more than thirty grams of marijuana, the State had to show that he intended to deliver it. I.C. § 35-48-4-10(a). "Because intent is a mental state, and because it is often the case that an actor does not verbally express intent, the trier of fact must usually resort to reasonable inferences based on examination of the surrounding circumstances to determine the existence of the requisite intent." *Chandler v. State*, 581 N.E.2d 1233, 1237 (Ind. 1991). Intent to deliver contraband can be inferred from such surrounding circumstances as possession of a large quantity of drugs, a large amount of currency, scales, plastic bags and other paraphernalia, as well as evidence of other drug transactions. *Bradley v. State*, 44 N.E.3d 7, 24 (Ind. Ct. App. 2015) (citing *Chandler*, 581 N.E.2d at 1237). Such circumstantial evidence is sufficient to support a conviction. *Id*.

[16] Here, the evidence established that Tibbs possessed a total of 87.66 grams of marijuana, which is certainly a "large amount." *See, e.g.*, *Montego v. State*, 76 (noting that a quantity of drugs permitting an inference of an intent to sell "is one which could not be personally consumed or utilized and therefore of necessity [is] available for delivery"). And other circumstantial evidence also supports an inference that Tibbs intended to deliver the marijuana. The search warrant was based on information provided by a credible, reliable confidential informant who had previously engaged in three separate drug buys from the variety store owned by Tibbs. Tibbs possessed a digital scale, which Detective Ingram testified are often used by drug dealers but not drug users, and the scale

was located next to the jar of marijuana and right above the bag of marijuana. And Tibbs had on his person a large sum of money. This was sufficient evidence from which the jury could reasonably infer that Tibbs intended to sell the marijuana. Tibbs' assertions to the contrary are merely requests that we reweigh the evidence, which we will not do. *See Jackson*, 925 N.E.2d at 375.

## Conclusion

[17] There was sufficient evidence that Tibbs possessed more than thirty grams of marijuana with the intent to deliver. Therefore, we affirm his conviction.

[18] Affirmed.

Robb, J., and Crone, J., concur.