## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 22 2016, 6:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darwick Young,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 22, 2016<br><br>Court of Appeals Case No.<br>49A02-1602-CR-216<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David Seiter, Commissioner<br><br>Trial Court Cause No.<br>49G20-1507-F2-024813 |

**Pyle, Judge.**

# Statement of the Case

Darwick Young ("Young") appeals his convictions for Level 2 felony dealing in cocaine;[1] Level 3 felony possession of cocaine;[2] Class A misdemeanor carrying a handgun without a license;[3] Level 6 felony maintaining a common nuisance;[4] and Class B misdemeanor possession of marijuana.[5] On appeal, he argues that there was insufficient evidence to support his convictions. Because we conclude that there was sufficient evidence, we affirm his convictions.

However, we note that the trial court improperly entered a judgment of conviction on Young's possession of cocaine conviction prior to merging it with his dealing in cocaine conviction. The trial court also improperly enhanced all of Young's convictions with his sentence for being an habitual offender. To correct these errors, we remand to the trial court with instructions to vacate Young's Level 3 felony possession of cocaine judgment of conviction and to revise his sentence so that his habitual offender sentence enhances only his dealing in cocaine conviction.

We affirm and remand.

---

[1] IND. CODE § 35-48-4-1(a)(2).

[2] I.C. § 35-48-4-6(a).

[3] I.C. § 35-47-2-1.

[4] I.C. § 35-48-4-13(b)(2).

[5] I.C. § 35-48-4-11(a)(1).

# Issue

Whether there was sufficient evidence to support Young's convictions.

# Facts

At 7:23 p.m. on July 12, 2015, Indianapolis Metropolitan Police Department ("IMPD") officers Jordan Bull ("Officer Bull") and Sergio Deleon ("Officer Deleon") were dispatched to an address on North Edmondson Street in Indianapolis in response to a report that there was suspicious activity occurring in a vehicle at that address. When the officers arrived, they pulled up behind the vehicle in question. Officer Bull saw a woman, later identified as Danielle Barksdale ("Barksdale"), exit the passenger side of the vehicle and enter the residence at the address where the vehicle was parked.

Officer Bull walked up to the vehicle on foot, and the driver, who was later identified as Young, rolled down his window. As he did so, Officer Bull "immediately recognized the odor of raw marijuana coming from the vehicle." (Tr. 40). As a result, he asked Young to exit the vehicle and placed him into handcuffs so that he could search the vehicle.

Officer Bull first searched the driver's seat area of the vehicle and found a handgun located between the driver's seat and the center console. He confirmed that Young did not have a gun permit and that Young was the registered owner of the vehicle. He then continued his search and found a smart phone in plain view by the vehicle's cup holders, as well as two flip phones and a digital scale in the center console. In the back of the car, tucked

underneath and behind the passenger's seat, Officer Bull found clear plastic sandwich bags and a thermos. He opened the thermos and noticed that it was shallower inside than he expected based on its outward appearance. Also, the odor of raw marijuana was "apparent." (Tr. 50). He searched the thermos and located a hidden compartment inside that contained a purple cloth bag. Inside the cloth bag were bags containing what was later identified as 9.52 grams of cocaine, 3.06 grams of crack cocaine, and 2.55 grams of marijuana.

[7] While Officer Bull searched Young's vehicle, Officer Deleon searched Young and found "wads of money" totaling $2,950 in at least two of Young's pockets. (Tr. 72). He also searched the vehicle's trunk and found a box of ammunition and mail addressed to Young.

[8] Subsequently, on July 15, 2015, the State charged Young with Count 1, Level 2 felony dealing in cocaine; Count 2, Level 3 felony possession of cocaine; Count 3, Class A misdemeanor carrying a handgun without a license; Count 4, Level 6 felony maintaining a common nuisance; and Count 5, Class B misdemeanor possession of marijuana. The State also alleged that Young was an habitual offender.[6]

[9] The trial court then held a jury trial on the charges on December 3, 2015. At the trial, Officer Bull testified that he believed that the thermos containing the bags of drugs had been within Young's reach inside of the car. IMPD Sergeant

---

[6] I.C. § 35-50-2-8.

Charles Tice ("Sergeant Tice") testified regarding the differences between users of narcotics and dealers of narcotics. He said that "any kind of narcotic dealer is going to have three basic things, they're going to have product, money[,] and protection." (Tr. 165). That protection, according to Sergeant Tice, would "nine times out of [ten] be a gun." (Tr. 174). In contrast, he testified, a cocaine user would not likely carry a firearm because a firearm would enhance a cocaine charge. Similarly, Sergeant Tice testified that it would not be common to find a narcotics user in possession of 9.52 grams of cocaine because most narcotics users recognize that there are stiffer penalties for carrying high amounts of cocaine. Also, a cocaine user typically uses only "about 0.1 [or] 0.2 grams of cocaine" per "hit." (Tr. 185). As for the narcotics that the police found in Young's car, Sergeant Tice testified that 9.52 grams of cocaine and 3.06 grams of crack cocaine would be worth $2,000 and $600, respectively, on the market.

[10] Young testified on his own behalf and denied that the drugs, handgun, money, and paraphernalia belonged to him. Specifically, he testified that on the night that he had been arrested, Barksdale had placed the handgun in his vehicle and then returned to her mother's house to get cigarettes. As for the cash that the police had found in his pockets, Young testified that he had collected the money from four people who shared his phone line so that he could pay for a high cell phone bill. He said that the rest of the cash was rent and utility money. As for the other evidence the police collected from his vehicle, Young testified that he did not know how the ammunition, digital scale, or thermos

full of narcotics had gotten into his car, but he stated that "three or four other people" had had access to his car and that he had a history of loaning out his car to others. (Tr. 195).

[11] At the conclusion of the trial, the jury found Young guilty as charged, and Young admitted to being an habitual offender. The trial court sentenced Young to: eighteen (18) years, with ten (10) years executed and eight (8) years suspended, for Count 1; 365 days for Count 3; one (1) year for Count 4; ninety (90) days for Count 5; and six (6) years for his habitual offender enhancement.[7] The court also merged Young's possession of cocaine conviction with his

---

[7] In its "Order of Judgment and Sentence," the trial court provided that Young's habitual offender enhancement should run consecutive to "Count 1, 2, 3[,] 4[,] 5." (App. 142). Such a sentence is contrary to our supreme court's holding in *Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997), where it held that:

> A habitual offender finding does not constitute a separate crime nor result in a separate sentence, but rather results in a sentence enhancement imposed upon the conviction of a subsequent felony. In the event of simultaneous multiple felony convictions and a finding of habitual offender status, trial courts must impose the resulting penalty enhancement upon only one of the convictions and must specify the convictions to be so enhanced.

(internal citations omitted). Pursuant to INDIANA CODE § 35-50-2-8(j),

> The court shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced. If the felony enhanced by the habitual offender determination is set aside or vacated, the court shall resentence the person and apply the habitual offender enhancement to the felony conviction with the next highest sentence in the underlying cause, if any.

Here, the trial court erred by imposing Young's penalty enhancement for his habitual offender status on all five of his convictions. Applying the sentencing rules specified in INDIANA CODE § 35-50-2-8(j), the trial court should have imposed Young's habitual offender enhancement on only his highest sentence, which was his sentence for his dealing in cocaine conviction. Accordingly, we remand with instructions for the trial court to resentence Young so that his habitual offender sentence enhances solely his sentence for dealing in cocaine.

dealing in cocaine conviction and ordered that Young serve all of his sentences concurrently.[8]  Young now appeals.

# Decision

[12] On appeal, Young challenges the sufficiency of the evidence for all of his convictions.  He claims that, even though the police found the drugs and handgun in his car, his presence in the car was not sufficient to prove that he possessed the drugs or carried the firearm without a license.  Alternatively, he argues that even if there was sufficient evidence that he possessed the cocaine, there was no evidence that he intended to deliver it, as was required for both his dealing in cocaine and maintaining a common nuisance convictions.  We will address each of these arguments in turn.

[13] First, however, we note that when considering a challenge to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses.  *Sidener v. State*, 55 N.E.3d 380, 385 (Ind. Ct. App. 2016).  We will affirm if the probative evidence and reasonable inferences drawn therefrom

---

[8] In regard to the trial court's act of merging Young's possession of cocaine and dealing in cocaine convictions, which were convictions for which the trial court had already entered a judgment of conviction, we note that "[a] trial court's act of merging, without also vacating the conviction, is not sufficient to cure a double jeopardy violation" and that such a violation cannot be remedied by the "practical effect" of merging after a conviction has been entered. *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied.  See also Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) (explaining that "a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned").  Because the record reveals that the trial court entered judgment of conviction on Young's possession of cocaine and dealing in cocaine convictions prior to merging them, we reverse in part and remand this cause to the trial court with instructions to vacate Young's judgment of conviction on Count 2, possession of cocaine.

could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.*

### 1. Dealing in Cocaine

[14] Young's argument that there was insufficient evidence to support his dealing in cocaine conviction has two components. First, he claims that there was no evidence that he possessed the cocaine that the police found in the thermos inside of his vehicle. He contends that he did not know about the drugs, and he notes that his testimony that other people had used his vehicle before his arrest was undisputed. He claims that those other people accounted for the fact that the drugs were in his car without his knowledge. Alternatively, Young argues that there was no evidence that, even if he possessed the cocaine, he intended to deliver it to another person.

[15] In order to convict Young of dealing in cocaine, the State was required to prove that he "possess[ed], with intent to (A) manufacture; (B) finance the manufacture of; (C) deliver; or (D) finance the delivery of; cocaine or a narcotic drug, pure or adulterated. . . ." I.C. § 35-48-4-1(a)(2).

[16] With regard to Young's first argument, that he did not possess the cocaine, it is well-established that possession of an item may be either actual or constructive. *See Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997). Actual possession occurs when a person has direct physical control over the item. *Houston v. State*, 997 N.E.2d 407, 410 (Ind. Ct. App. 2013). Constructive possession, which is applicable in this case, occurs

when a person has: (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. *Lampkins*, 682 N.E.2d at 1275.

[17] The capability element of constructive possession is met when the State shows that the defendant is able to reduce the controlled substance to the defendant's personal possession. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). Additionally, "[a] trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). *See also Goliday*, 708 N.E.2d at 6 (explaining that "[p]roof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain control and dominion over the items in question") (quoting *Davenport v. State*, 464 N.E.2d 1302, 1307 (Ind. 1984), *cert. denied*).

[18] The intent element of constructive possession is shown if the State demonstrates the defendant's knowledge of the presence of the contraband. *Goliday,* 708 N.E.2d at 6. A defendant's knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of contraband. *Id.* These additional circumstances may include: "(1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's

proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns." *Gray*, 957 N.E.2d at 175. This list is non-exhaustive, and other circumstances may just as reasonably demonstrate the defendant's requisite knowledge of the presence and character of contraband. *Carnes v. State*, 480 N.E.2d 581, 586 (Ind. Ct. App. 1985), *reh'g denied*, *trans. denied*.

[19] Here, the jury could infer that Young had the capability to maintain dominion and control over the contraband because Young had a possessory interest in the vehicle where the contraband was found. *See Gray*, 957 N.E.2d at 174. However, Young argues that the jury could not infer that he had knowledge of the drugs because he did not have exclusive dominion and control over his vehicle. Specifically, he contends that Barksdale's presence in the vehicle shortly before the police officers searched it negated his exclusive control over the car.

[20] We are not persuaded by Young's argument because, even assuming that Young did not have exclusive dominion and control over his vehicle, additional circumstances permitted the inference that he had knowledge of the drugs. While the drugs were not in plain view, Officer Bull testified that they were within Young's reach inside of the car and, therefore, within close proximity to him. Officer Bull also testified that he immediately smelled the odor of raw marijuana when Young rolled down the vehicle's window. Further, other evidence within Young's view and/or interspersed among his belongings, including the flip phones, digital scale, plastic bags, and large amounts of cash,

were consistent with a drug delivery setting. In light of these additional factors, we conclude that there was sufficient evidence that Young had constructive possession of the drugs.[9]

[21] Alternatively, Young argues that, even if there was sufficient evidence that he possessed cocaine, there was not sufficient evidence that he intended to deliver that cocaine to others. He contends that neither the quantity of the cocaine nor its packaging were sufficient to prove such an intent.

[22] Because intent is a mental state, it can be established only by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn therefrom. *Richardson v. State*, 856 N.E.2d 1222, 1227 (Ind. Ct. App. 2006), *trans. denied.* Circumstantial evidence of intent may support a conviction. *Id.* Possessing a large amount of a narcotic substance is circumstantial evidence of the intent to deliver. *Id.* The more narcotics a person possesses, the stronger the inference that he intended to deliver it rather than consume it personally. *Id.*

[23] Young argues that the amount of cocaine he possessed and its packaging were insufficient to prove that he intended to deliver the cocaine. However,

---

[9] Young also argues that there was insufficient evidence of his constructive possession of the marijuana to support his conviction for possession of marijuana. In order to convict Young of possession of marijuana, the State was required to prove that he "knowingly or intentionally possess[ed] (pure or adulterated) marijuana." I.C. § 35-48-4-11(a)(1). As the police found the marijuana in Young's car in the same location as the cocaine, our analysis of Young's constructive possession of the cocaine also applies to his constructive possession of the marijuana. Accordingly, we conclude that there was sufficient evidence that he possessed the marijuana to support his conviction for possession of marijuana.

regardless of the amount and packaging of Young's cocaine, there was substantial circumstantial evidence of his intent. Sergeant Tice testified that a cocaine dealer, as opposed to a cocaine user, would typically have money, a weapon, and product on him. This analysis was consistent with Young's circumstances as Officers Deleon and Bull found $2,950 in Young's pockets, a handgun next to Young's seat, and cocaine within reach. The officers also found items associated with dealing cocaine in Young's car, including two flip phones, plastic bags, and a digital scale. In light of this evidence, we conclude that there was sufficient evidence of Young's intent to support his conviction for dealing in cocaine.[10]

## 2. Carrying a Handgun

Next, Young argues that there was not sufficient evidence that he possessed the handgun to support his conviction for carrying a handgun without a license. In particular, he asserts that the firearm belonged to Barksdale and that she possessed it, even though the police found it inside of his vehicle.

Carrying a handgun can also be shown by either actual or constructive possession. *Wallace v. State*, 722 N.E.2d 910, 913 (Ind. Ct. App. 2000). As above, constructive possession occurs when a person has the capability and intent to maintain dominion and control over the item. *Id.*

---

[10] Young also argues that, because there was no evidence of his intent to deal cocaine, there was insufficient evidence to support his conviction for maintaining a common nuisance. Because we conclude that there was evidence of his intent to deal cocaine, we need not address this argument.

[26]     Here, the jury was allowed to infer that Young had the capability to maintain dominion and control over the handgun as he had a possessory interest in the vehicle where it was found. *See Gray*, 957 N.E.2d at 174. As for Young's intent, we conclude that Young clearly intended to maintain dominion and control over the handgun. In his testimony at trial, Young admitted that when he saw the police officers, he picked up the gun and moved it so that they would not think he was threatening them. This action demonstrated that Young had knowledge of the gun and the intent to control it. Hence, we conclude that there was sufficient evidence of his constructive possession of the gun to support his conviction for carrying a handgun without a license. Young's argument that the firearm belonged to Barksdale rather than himself is a request for us to reweigh the evidence, which we will not do. *Sidener*, 55 N.E.3d at 385.

[27]     Affirmed and remanded.

Bradford, J., and Altice, J., concur.